532 S.E.2d 890

**Melinda A. MAZZONE, Appellant,**

v.

**Anthony P. MILES, Respondent.**

No. 3185.

Court of Appeals of South Carolina.

Heard March 9, 2000.
Decided June 12, 2000.

W. Dean Murphy, III, of Charleston, for appellant.

Susan T. Kinard, W. Robert Kinard, both of Kinard & Kinard, of North Charleston, for respondent.

CONNOR, Judge:

Melinda A. Mazzone (the mother) appeals from a decision of the family court imputing minimum wage income to Anthony P. Miles (the father) for purposes of awarding child support and changing the surname of the parties' minor child from Mazzone to Miles. The mother also appeals from the court's failure to award her attorney's fees. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL BACKGROUND

The parties are the natural parents of Lacey, born May 29, 1992. They have never been married. The mother has had custody of the child since her birth.

The mother commenced this action against the father in November 1997 seeking, among other things, an order establishing the father's child support obligation and awarding her attorney's fees. The father answered, admitting his child support obligation should be judicially established in accordance with the South Carolina Child Support Guidelines, and counterclaimed seeking, among other things, visitation and an order changing the child's surname from Mazzone, the mother's maiden name, to Miles.

Prior to the commencement of this action, the father voluntarily, though sporadically, provided financial support for the child, including day care expenses. He had been employed at

Crowley's American Transport for over five years and was earning $12.50 per hour when he was terminated in October 1997. After he was terminated, the father started his own tractor trailer repair business. The business was operating at a loss at the time of trial.

Regarding his request that the child's surname be changed to Miles, the father testified he told the mother during her pregnancy he wanted the child to have his last name. He also noted he has had a close relationship with the child since her birth and, in fact, lived with the mother and child for up to two years.

In support of her contention the child's surname should not be changed from Mazzone to Miles, the mother testified the child was comfortable with her last name. She further stated she did not want to confuse the child or cause confusion at the child's school. She explained that she refused to put the father's name on the child's birth certificate because "he sort of dogged me through my whole pregnancy and he wasn't supportive."

The family court judge found the father was capable of continuing to pay child support. He imputed minimum wage to the father. Applying the Guidelines, the court ordered the father to pay $172.63 per month. Further, the court found the child's best interest would be served by ordering her surname changed from Mazzone to Miles. Additionally, the court ordered each party to pay his or her own attorney's fees and costs.

## STANDARD OF REVIEW

█ In appeals from the family court, this Court has the authority to find facts in accordance with our own view of the preponderance of the evidence. *Owens v. Owens*, 320 S.C. 543, 466 S.E.2d 373 (Ct.App.1996). This broad scope of review does not, however, require this Court to disregard the findings of the family court. *Stevenson v. Stevenson*, 276 S.C. 475, 279 S.E.2d 616 (1981). Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson*, 276 S.C. 524, 280 S.E.2d 541 (1981).

## DISCUSSION

### I.

The mother asserts the family court erred in imputing only minimum wage to the father. She contends the father's employment potential is considerably greater.

Under the South Carolina Child Support Guidelines, "income" is defined as "the actual gross income of the parent, if employed to full capacity, or potential income if unemployed or under employed." 27 S.C.Code Ann.Regs. 114–4720(1) (Supp. 1998). Regarding the imputation of income, the Guidelines provide in pertinent part:

> *Potential Income.* If the court finds that a parent is voluntarily unemployed or under employed, it should calculate child support based on a determination of potential income which would otherwise ordinarily be available to the parent. . . .
>
> (b) In order to impute income to a parent who is unemployed or under employed, the court should determine the employment potential and probable earnings level of the parent based on that parent's recent work history, occupational qualifications, and prevailing job opportunities and earning levels in the community.

27 S.C.Code Ann.Regs. 114–4720(A)(5)(b) (Supp.1998).[1]

The father testified he was fired from his job at Crowley's for refusing to participate in fraudulent activity. He explained there were few jobs available similar to his job at Crowley's. He admitted, however, that he declined an offer of employment as a repairman which would have paid $10.50 per hour.

At the time of trial, the father's tractor trailer repair business was less than a year old and had suffered a net loss. In partial explanation of the business's failure to produce a profit, the father testified his business expenses were greater than he had anticipated.

---

1. We refer to this version of the regulation because it was in effect at the time of the hearing. We note, however, the regulation has been rewritten. The amended regulation became effective March 26, 1999. *See* 27 S.C.Code Ann.Regs. 114–4720 (Supp.1999).

██ There is no evidence indicating the father's loss of his prior job was because of any wrongdoing. Moreover, there is no evidence his decision to start his own business was motivated by a desire to avoid his support obligation. Rather, the evidence indicates the father made a good-faith decision to pursue self-employment. The fact that the newly-formed business has not yet shown a profit does not constitute a showing the father's efforts at making the business a success have been less than sincere. *See Kelley v. Kelley,* 324 S.C. 481, 488, 477 S.E.2d 727, 731 (Ct.App.1996) ("[T]he failure to reach earning capacity, by itself, does not automatically equate to voluntary underemployment such that income must be imputed."); *Kelley,* 324 S.C. at 489, 477 S.E.2d at 731 (Where actual income versus earning capacity is at issue, courts are to closely examine the payor's good-faith and reasonable explanation for the decreased income.). Furthermore, the father is required to submit financial reports of his business every six months to the mother so that she can be aware of any increased profit.

██ Under the facts and circumstances of this case, we find no error in the family court's decision to impute only minimum wage to the father for purposes of computing his child support obligation. *See Smith v. Smith,* 264 S.C. 624, 216 S.E.2d 541 (1975) (The amount of child support ordered is within the discretion of the trial court.).

## II.

Next, the mother asserts the family court erred in ordering the child's surname changed to Miles.[2]

██ Initially, we note the mother raised for the first time on appeal the family court's failure to appoint a guardian ad litem to represent the child's interest pursuant to S.C.Code Ann. § 15–49–10(B) (Supp.1999).[3] Because the failure to ap-

---

**2.** This issue is limited to an analysis of the surname change. At trial, the mother did not object to having the father's name added to the child's birth certificate.

**3.** S.C.Code Ann. § 15–49–10(B) (Supp.1999) provides:

A parent who desires to change the name of his minor child may petition, in writing, a family court judge in the appropriate circuit.

point a guardian ad litem does not affect the jurisdiction of the family court, it cannot be raised for the first time on appeal. *Nicholson v. Mull*, 266 S.C. 559, 562, 225 S.E.2d 186, 188 (1976) ("The issue concerning the failure to appoint a guardian ad litem in this action for the minor was not raised below and, not being jurisdictional, cannot be raised for the first time on appeal."). As such, we need not address this issue, but instead, proceed to analyze the merits of the surname change.[4]

In deciding whether to allow a change in the child's surname, the family court should grant the request only if the change promotes the child's best interests and welfare. *Ex Parte Stull*, 276 S.C. 512, 280 S.E.2d 209 (1981). The parent seeking to change the child's surname has the burden of proving that the change will further the child's best interests. *Girten v. Andreu*, 698 So.2d 886 (Fla.Dist.Ct.App.1997); *Barabas v. Rogers*, 868 S.W.2d 283 (Tenn.Ct.App.1993).

Our appellate courts have not set out guidelines for when the change of a surname is in a child's best interests. However, other jurisdictions which have addressed this issue have considered a number of factors. Although this is not an exhaustive list, the following factors provide guidance for our decision: (1) the length of time that the child has used the present surname; (2) the effect of the change on the preservation and development of the child's relationship with each parent; (3) the identification of the child as part of a family unit; (4) the wishes of the parents; (5) the stated reason for the proposed change; (6) the motive of the parents and the possibility that the use of a different name will cause insecurity or a lack of identity; (7) the difficulty, harassment, or embarrassment that the child may experience when the child bears a surname different from the custodial parent; (8) the

---

The other parent, if there is not one then the child, must be named as a party in the action unless waived by the court. The court shall appoint a guardian ad litem to represent the child. The court shall grant the petition if it finds that it is in the best interest of the child.

4. Taking our own view of the preponderance of the evidence, we agree with the mother that the family court erred in changing the child's surname. Based on the specific facts of this case, we do not believe the appointment of a guardian ad litem would have affected our decision. Therefore, we express no opinion whether section 15–49–10(B) mandates that a guardian ad litem be appointed in future cases.

preference of the child if the child is of an age and maturity to express a meaningful preference; and (9) the degree of community respect associated with the present and proposed surname. *Pizziconi v. Yarbrough,* 177 Ariz. 422, 868 P.2d 1005 (Ct.App.1993); *Bobo v. Jewell,* 38 Ohio St.3d 330, 528 N.E.2d 180 (1988); *Barabas v. Rogers,* 868 S.W.2d 283 (Tenn. Ct.App.1993); *see* Jay M. Zitter, Annotation, *Rights and Remedies of Parents Inter Se with Respect to the Names of Their Children,* 40 A.L.R.5th 697 (1996 & Supp.1999) (analyzing cases involving questions as to the right of one parent, against the objection or without consent of the other, to have the name of their child changed); 57 Am.Jur.2d *Name* §§ 46– 54 (1988 & Supp.1999) (discussing factors court should consider in determining a minor child's best interest with respect to a change of name).

Applying the above factors which are applicable in this case, we find there is insufficient evidence to support the family court's conclusion that the change in name is in the best interests of the child. The only testimony offered by the father regarding the name change was his desire for the child to bear his name "[b]ecause she is [his] daughter." He also expressed concern that the mother had taught the child to refer to him as "Daddy Tony" and the mother's boyfriend as "Daddy Bruce." The father, however, did not institute any formal proceeding to change the child's name before the mother filed the present action. Although the father lived briefly with the mother and child, has visited the child, and has sporadically paid support, these actions alone are not sufficient to satisfy the father's burden of proving the name change is in the child's best interests. The mother has been the custodial parent since the child's birth, and the child has been known by her surname. The mother testified the child is "comfortable with her last name." The mother further testified because the child knows her name as "Lacy Mazzone," a change to the father's name would create confusion for the child and the administration at the school she attends.

Although we recognize the father has a protectible interest in having the child bear his surname, his interest is not greater than the mother's interest. Instead, both parents have an equal interest in the child bearing their respective

surname. *See Ex Parte Stull,* 276 S.C. at 513, 280 S.E.2d at 210 ("[B]ecause the father has a protectible interest in having his child bear the paternal surname, even though the mother has been awarded custody of the child, he should be notified of any proceedings for a change in his minor child's surname and be allowed to participate in the hearing if he so desires.") (citation omitted); *Bobo,* 528 N.E.2d at 185 ("While it may be a custom to name a child after the father, giving greater weight to the father's interest fails to consider that, where the parents have never been married, the mother has at least an equal interest in having the child bear the maternal surname. In these times of parental equality, arguing that the child of unmarried parents should bear the paternal surname based on custom is another way of arguing that it is permissible to discriminate because the discrimination has been endured for many years.").

Under the facts of this particular case, we do not find the record affirmatively shows the name change is in the child's best interest. *See Girten v. Andreu,* 698 So.2d 886, 888 (Fla.Dist.Ct.App.1997) (" 'To change the name of a [child] . . . is a serious matter, and such action may be taken only where the record affirmatively shows that such change is required for the welfare of the [child].' ") (quoting *Lazow v. Lazow,* 147 So.2d 12, 14 (Fla.Dist.Ct.App.1962)); *see, e.g., Girten,* 698 So.2d at 888 (where child was born to unmarried parents, trial judge erred in changing the child's maternal surname to that of the father, finding the father failed to meet his burden of proving the name change was in the child's best interest when the only evidence presented was the father's desire that the child bear his surname and his concern that the use of the mother's surname would allow the mother greater influence over the child); *Sullivan v. McGaw,* 134 Ill.App.3d 455, 89 Ill.Dec. 540, 480 N.E.2d 1283 (1985) (holding trial court erred in ordering name of child, who was born to unmarried parents, changed to the father's surname where there was no evidence in the record the court considered any of the suggested factors but merely articulated that the child's name should be changed); *Lufft v. Lufft,* 188 W.Va. 339, 424 S.E.2d 266 (1992) (concluding trial court erred in changing minor child's surname from the mother's maiden name to the father's surname, reasoning the name change was not in the child's best interest

given: (1) the child had never held the father's surname, (2) the father made no effort to change the child's surname before the divorce proceeding, and (3) the father's primary reason for the name change was his fear that the child would be considered illegitimate).

Therefore, we reverse the decision of the family court ordering the name change and remand for an order to reinstate the child's surname to Mazzone.

## III.

Finally, the mother asserts the family court erred in failing to award her attorney's fees.

In denying the mother's request for attorney's fees, the court reasoned that the mother failed to prevail on a majority of the issues raised in her Complaint, whereas the father had prevailed on the issues raised in his Counterclaim.

The award of attorney's fees is within the discretion of the court. *Hardwick v. Hardwick,* 303 S.C. 256, 399 S.E.2d 791 (Ct.App.1990). In determining whether to award attorney's fees, the court should consider each party's ability to pay his or her own fee; the beneficial results obtained by the attorney; the parties' respective financial conditions; and the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). In determining the amount of attorney's fees to award, the court should consider the nature, extent, and difficulty of the services rendered, the time necessarily devoted to the case, counsel's professional standing, the contingency of compensation, the beneficial results obtained, and the customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Even though the court based its decision solely on whether each party prevailed on his or her respective issues, we find there is sufficient support in the record to affirm the decision. *See Epperly v. Epperly,* 312 S.C. 411, 440 S.E.2d 884 (1994) (In family court actions, this Court has jurisdiction to find facts in accordance with our own view of the preponderance of the evidence.); *cf. Townsend v. Townsend,* 323 S.C. 309, 318, 474 S.E.2d 424, 430 (1996) (where order awarding attorney's

fees does not contain specific findings of fact, "reversal is not warranted as long as each factor is supported by evidence in the Record."); *Robinson v. Tyson*, 319 S.C. 360, 461 S.E.2d 397 (Ct.App.1995) (no abuse of discretion in ordering payment of attorney's fees where record contains sufficient evidentiary support for the award).

Although the mother's attorney achieved a beneficial result in terms of the family court's award of child support and related relief, this alone is not dispositive of whether mother was entitled to an award of attorney's fees. A review of the parties' child support obligation worksheet and financial declarations reveals the mother has the ability to pay for her attorney's fees. In fact, her income is slightly greater than the father's. In light of the financial situations of each party, we find neither party is in a superior financial position to pay for the other's attorney fees. Accordingly, we cannot conclude the family court abused its discretion in denying the mother's request.

For the foregoing reasons, the decision of the family court is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

GOOLSBY and HOWARD, JJ., concur.