567 S.E.2d 514

**CHEAP–O's TRUCK STOP, INC., Respondent,**

v.

**Chris CLOYD and United Oil Marketers, Inc., Appellants.**

**Midland Gaming, Inc., Respondent,**

v.

**Chris Cloyd, United Oil Marketers, Inc., and United Gaming, Appellants.**

No. 3512.

Court of Appeals of South Carolina.

Heard April 9, 2002.

Decided June 3, 2002.

Rehearing Denied Aug. 23, 2002.

598

Timothy G. Quinn, of Columbia, for appellants.

S. Jahue Moore, of Moore, Taylor, & Thomas, of W. Columbia, for respondents.

ANDERSON, Judge:

Chris Cloyd, United Oil Marketers, Inc., United Gaming (collectively "appellants") entered into an alleged settlement agreement with Cheap–O's Truck Stop, Inc., and Midlands Gaming, Inc. (collectively "respondents"). The appellants appeal the circuit court's order enforcing the settlement agreement, finding Chris Cloyd in contempt, and awarding attorney's fees in the amount of $1,050.00. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL BACKGROUND

Cheap–O's Truck Stop, Inc. and Midland's Gaming, Inc., entered into various business arrangements with Chris Cloyd, United Oil Marketers, Inc., and United Gaming. Midlands Gaming filed a complaint against Cloyd, United Oil Marketers, and United Gaming. Cheap–O's filed a complaint against Cloyd and United Oil Marketers.

The Midlands Gaming case was called for trial on July 17, 2000 in Lexington County before Judge Kenneth Goode. The Cheap O's case was scheduled to be heard the following week. The attorneys struck the jury in preparation for trial. Before the jury was sworn or opening statements delivered, both cases were settled. The parties put the settlement on the record and announced to the court that the defendants would pay the plaintiffs $80,000.00, of which $60,000.00 would be paid immediately, and $20,000.00 would be paid within two weeks. No order was signed in connection with this matter until August 15, 2000, when Judge Marc Westbrook signed a form order dismissing the case pursuant to Rule 43(k), SCRCP.

Cheap–O's and Midlands Gaming filed a petition to enforce the settlement. In connection with the petition, Judge Goode issued a rule to show cause on August 14, 2000, directing the appellants to show cause why the petition should not be granted. On August 24, 2000, the Supreme Court issued an order vesting Judge Goode with concurrent jurisdiction in Lexington and Fairfield counties on August 24, 2000. Judge Goode held the rule to show cause hearing on that date in Fairfield County.

Judge Goode subsequently entered an order on September 18, 2000, finding the settlement agreement complied with Rule 43(k) and enforcing it. Judge Goode held Chris Cloyd in contempt for refusing to comply with the settlement agreement, willfully disobeying a subpoena, and willfully disregarding the court's order approving the settlement. He also awarded attorney's fees in the amount of $1,050.00. Cloyd, United Oil Marketers, and United Gaming appeal.

## LAW/ANALYSIS

### I. SUBJECT MATTER JURISDICTION

■ The appellants argue the circuit court lacked subject matter jurisdiction to issue the rule to show cause, conduct the rule to show cause hearing, and issue the order in connection with the rule to show cause. They contend the circuit judge was required to exercise his judicial powers within the geographical boundaries of Lexington County. We disagree.

The Supreme Court issued the following order in connection with the rule to show cause hearing:

Pursuant to the provisions of S.C. CONST. Art. V, § 4, IT IS ORDERED that the Honorable Kenneth G. Goode be vested with jurisdiction to hear and dispose of common pleas matters for Lexington County for the day of August 24, 2000. The jurisdiction is concurrent with his previously scheduled assignment to the term of the Court of Common Pleas for Fairfield County which is otherwise unaffected by this Order.

JEAN HOEFER TOAL, CHIEF JUSTICE

By: s/ Motte Talley

Motte Talley, Assistant Director

S.C. Court Administration

"The Chief Justice shall set the terms of any court and shall have the power to assign any judge to sit in any court within the unified judicial system." S.C. Const. Art. V, § 4. Thus, the order vests Judge Goode with jurisdiction for Lexington and Fairfield counties pursuant to the power of the Chief Justice under article V of the South Carolina Constitution.

Judge Goode heard this Lexington County matter on August 24, 2000, in Fairfield County. We find the order does not require Judge Goode to travel to Lexington to hear the Lexington County matter. He had jurisdiction in both counties concurrently. Further, in its order the circuit court stated, "once the court recognized Mr. Quinn was raising a jurisdictional objection it contacted the South Carolina Court Administration and received a directive to proceed with the Rule to Show Cause Hearing."

## II. ATTORNEY CONFLICT OF INTEREST

■ Appellants declare the respondents' attorney should have been disqualified from representing the respondents in this suit. They claim the attorney's law firm previously represented appellant United Oil Marketers, Inc., in a substantially similar matter. We find this issue is moot.

■ "An appellate court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy." *Curtis v. State,* 345 S.C. 557, 567, 549

S.E.2d 591, 596 (2001) (citing *Jackson v. State*, 331 S.C. 486, 489 S.E.2d 915 (1997)). "Mootness has been defined as follows: 'A case becomes moot when judgment, if rendered, will have no practical legal effect upon existing controversy. This is true when some event occurs making it impossible for the reviewing Court to grant effectual relief.'" *Byrd v. Irmo High School*, 321 S.C. 426, 431, 468 S.E.2d 861, 864 (1996) (quoting *Mathis v. S.C. State Highway Dep't*, 260 S.C. 344, 346, 195 S.E.2d 713, 715 (1973)).

Because we find the present case was settled and the settlement is enforceable, the issue is moot. *See S.C. State Highway Dep't v. McKeown Food Store No. 9*, 254 S.C. 180, 183, 174 S.E.2d 342, 343 (1970) (holding a settlement ended the litigation and rendered moot the issue on appeal); *Stevens v. Stevens*, 272 S.C. 130, 130, 249 S.E.2d 744, 744 (1978) (holding that as the result of a settlement entered into between the parties, all issues were moot in the case except that involving attorney fees).

### III. ENFORCEABILITY OF SETTLEMENT AGREEMENT

Appellants argue the circuit court erred in finding the agreement was enforceable under Rule 43(k), SCRCP. They aver the purported settlement agreement was not reduced to writing and the agreement that is on the record does not contain material terms. We disagree.

"No agreement between counsel affecting the proceedings in an action shall be binding unless reduced to the form of a consent order or written stipulation signed by counsel and entered in the record, or unless made in open court and noted upon the record." Rule 43(k), SCRCP. Rule 43(k) is applicable to settlement agreements. *Ashfort Corp. v. Palmetto Constr. Group, Inc.*, 318 S.C. 492, 494, 458 S.E.2d 533, 534 (1995). The purpose of rules such as Rule 43(k) is to prevent fraudulent claims of oral stipulations, to prevent disputes as to the existence and terms of agreements, and to relieve the court of the necessity of determining such disputes. *Reed v. Associated Invs. of Edisto Island, Inc.*, 339 S.C. 148, 152, 528 S.E.2d 94, 96 (Ct.App.2000) (citing *Ashfort*, 318 S.C. at 495, 458 S.E.2d at 535; 83 C.J.S. *Stipulations* § 4 (1953)).

Even though the settlement agreement was not in writing, it complied with Rule 43(k) because it was made in open court and noted upon the record. In announcing the settlement, the respondents' attorney stated the following:

> Yes, Sir. The terms are as follows: The defendants in those cases will pay to the plaintiffs in those cases the sum of Eighty–Thousand Dollars ($80,000.00). Sixty–Thousand Dollars ($60,000.00) of that eighty will be paid immediately; twenty thousand will be paid within the next two weeks. So this week, we'll have sixty, the balance will be within the next two weeks. There will be mutual releases, mutual orders for dismissals. Neither party will—after the payment of the eighty-thousand dollars, neither party owes anybody any money. They are completely released from any liability to each other. And the court can go ahead, if it would, and do a form order.

The dissent latches on to the fact that the administrative judge, not the trial judge, signed the Form 4 order. However, the Form 4 order identified the settlement agreement by rule number. It is purely a technical, legalistic review to conclude the settlement agreement is not encapsulated into the Form 4 order. There is a direct correlation of the Form 4 order and the settlement agreement placed on the record in open court.

We find the material terms of the settlement were read into the record and complied with Rule 43(k). Concomitantly, the settlement agreement is enforceable and binding.

## IV. FORM 4 ORDER

■ The appellants maintain the circuit court erred in holding Chris Cloyd in contempt because there was no final order. We disagree.

We hold there is a final order in this case. The appellants misconstrue and misperceive the potency of a Form 4 order. In effect, the argument of the appellants negates practicality and places form over substance.

Facially, factually and legally, the Form 4 order issued by Judge Marc H. Westbrook is a *FINAL ORDER.* Absolutely

nothing remained to be done by the circuit judge after the signing of the order.

The Form 4 order provides:

*CHECK ONE:*

[] **JURY VERDICT.** This action came before the court for a trial by jury. The issues have been tried and a verdict rendered.

[] **DECISION BY THE COURT.** This action came to trial or hearing before the court. The issues have been tried or heard and a decision rendered.

[X] **ACTION DISMISSED.** (*CHECK REASON* ): []Rule 12(b), SCRCP; [] Rule 41(a), SCRCP (Vol.Nonsuit) [X] Rule 43(k), SCRCP (Settled); []Other_____.

[] **ACTION STRICKEN** (*CHECK REASON* ): [] Rule 40(j) SCRCP; [] Bankruptcy; []Binding arbitration, subject to right to restore to confirm, vacate or modify arbitration award; [] Other_____.

**IT IS ORDERED AND ADJUDGED:** [] See attached order; [] Statement of Judgment by the Court:

Dated at Lexington, South Carolina, this 15th day of August, 2000.

The diagonal line penned by the circuit judge through the space for additional writing or remarks denotes that no further action is forthcoming or contemplated. There is no indicia or inference whatsoever to indicate that another order is necessary. The dismissal under Rule 43(k), SCRCP, is nexed directly to the settlement agreement placed on the record in open court.

As a matter of practice and convenience, a Form 4 order is used on a plethora of occasions as a *FINAL ORDER*. *IF* the Form 4 order is *NOT* efficacious as a final order, the circuit court will specifically and with certitude signify:

(1) a more formal order will be filed; *OR*

(2) the final order will be prepared by Attorney;_____ *OR*

(3) through the use of words and phrases what action will follow.

## V. CONTEMPT

Contempt is historically and academically bifurcated by courts. The case of *Curlee v. Howle*, 277 S.C. 377, 287 S.E.2d 915 (1982), is a paradigm of an academic and scholarly review of the law of contempt. *Curlee* edifies:

> ... The power to punish for contempt is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice. *McLeod v. Hite*, 272 S.C. 303, 251 S.E.2d 746 (1979); *State v. Goff*, 228 S.C. 17, 88 S.E.2d 788 (1955).... Contempt results from the willful disobedience of an order of the court, and before a person may be held in contempt, the record must be clear and specific as to the acts or conduct upon which such finding is based. *Edwards v. Edwards*, 254 S.C. 466, 176 S.E.2d 123 (1970); *Bigham v. Bigham*, 264 S.C. 101, 212 S.E.2d 594 (1975).

. . . . .

Compensatory contempt is a money award for the plaintiff when the defendant has injured the plaintiff by violating a previous court order. The goal is to indemnify the plaintiff directly for harm the contemnor caused by breaching the injunction. Rendleman, Compensatory Contempt: Plaintiff's Remedy When A Defendant Violates An Injunction, 1980 Ill.L.F. 971. Courts utilize compensatory contempt to restore the plaintiff as nearly as possible to his original position. Therefore it is remedial.

We have recognized compensatory contempt in at least two cases. In Ex Parte Thurmond, I Bailey 605 (1830), we stated that when an individual right is directly involved in a contempt proceeding, the court has the power to order the contemnor to place the injured party in as good a situation as he would have been if the contempt had not been committed, or to suffer imprisonment. In *Lorick & Lowrance v. Motley*, 69 S.C. 567, 48 S.E. 614 (1904), we held that a contemnor may be required to pay damages suffered by reason of his contemptuous action or suffer imprisonment. The defendant was ordered to pay to the plaintiff the

value of the trees he had destroyed in disregard of the court's order.

When ... property of an individual is taken or destroyed in contempt of the court's order, those interested have a right to ask of the court its restoration or payment of its value at the hands of the offender, and the court requires such restoration as part of the punishment. 48 S.E. at page 615.

Compensatory contempt awards have been affirmed also by the United States Supreme Court.

Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. Where compensation is extended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss ... *United States v. United Mine Workers of America*, 330 U.S. 258, 304–305, 67 S.Ct. 677, 701–702, 91 L.Ed. 884 (1947).

Therefore, the compensatory award should be limited to the complainant's actual loss. Included in the actual loss are the costs in defending and enforcing the court's order, including litigation costs and attorney's fees. The burden of showing what amount, if anything, the complainant is entitled to recover by way of compensation should be on the complainant.

 "A determination of contempt ordinarily resides in the sound discretion of the trial judge." *State v. Bevilacqua*, 316 S.C. 122, 129, 447 S.E.2d 213, 217 (Ct.App.1994) (citing *Whetstone v. Whetstone*, 309 S.C. 227, 420 S.E.2d 877 (Ct.App. 1992)). "It is well settled that contempt results from willful disobedience of a court order; and before a person may be held in contempt, the record must be clear and specific as to acts or conduct upon which the contempt is based." *Id.* (citing *State v. Harper*, 297 S.C. 257, 376 S.E.2d 272; *Spartanburg County Dep't of Social Services v. Padgett*, 296 S.C. 79, 370 S.E.2d 872 (1988); *Curlee v. Howle*, 277 S.C. 377, 287 S.E.2d 915 (1982)). "A willful act is defined as one done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something

the law requires to be done; that is to say with bad purpose either to disobey or disregard the law." *Id.* (citing *Padgett,* 296 S.C. at 82–3, 370 S.E.2d at 874).

The dissent attacks the basis for the order of contempt by stating the "fraudulent behavior" is not included in the petition for contempt. A cardinal rule of law in South Carolina edifies: "When issues not raised in the pleadings are tried by consent, they will be treated as if they had been raised in the pleadings." *McCurry v. Keith,* 325 S.C. 441, 447, 481 S.E.2d 166, 169 (Ct.App.1997). Unquestionably, the issue of the fraudulent conduct of Cloyd was tried by consent.

The order of Judge Kenneth G. Goode states:

... Mr. Cloyd acknowledged on the record the validity of the settlement amount. He simply has made no legitimate efforts to comply even though he admittedly had the power to comply at least in part.

I find and conclude that the Defendants have breached the settlement agreement. In addition, they have ... willfully disregarded the Court's Orders approving the settlement. Further, Mr. Cloyd's telephone call to Mrs. Worrell is an act of bad faith and I find and conclude it was simply an attempt to evade a lawful obligation at the expense at [sic] either the IRS or Attorney Moore.

I find and conclude that the excuses provided by Mr. Cloyd for his noncompliance are baseless. Further, there is no legitimate explanation as to the proposals made in the telephone call he placed to Mrs. Worrell.

We are convinced of the validity of the ruling of the circuit judge holding Cloyd in contempt. The evidentiary record justifies the contempt finding. Clearly, Cloyd is in contempt of court.

## VI. SANCTIONS

### A. Attorney's Fees

In *Harris–Jenkins v. Nissan Car Mart, Inc.,* 348 S.C. 171, 557 S.E.2d 708 (Ct.App.2001), our Court analyzed civil contempt as juxtaposed to the award of attorney's fees. *Harris–Jenkins* explicates:

Courts, by exercising their contempt power, can award attorney's fees under a compensatory contempt theory. Compensatory contempt seeks to reimburse the party for the costs it incurs in forcing the non-complying party to obey the court's orders. *See Poston v. Poston,* 331 S.C. 106, 114, 502 S.E.2d 86, 90, (1998) ("In a civil contempt proceeding, a contemnor may be required to reimburse a complainant for the costs he incurred in enforcing the court's prior order, including reasonable attorney's fees. The award of attorney's fees is not a punishment but an indemnification to the party who instituted the contempt proceeding.") *Lindsay v. Lindsay,* 328 S.C. 329, 345, 491 S.E.2d 583, 592 (Ct.App.1997) ("A compensatory contempt award may include attorney fees.") (citation omitted); *Curlee v. Howle,* 277 S.C. 377, 386–87, 287 S.E.2d 915, 919–20 (1982) ("Compensatory contempt is a money award for the plaintiff when the defendant has injured the plaintiff by violating a previous court order..... Included in the actual loss are the costs of defending and enforcing the court's order, including litigation costs and attorney's fees.").

The award of attorney's fees in this case is proper and justified. The amount of the attorney's fees, if anything, is extremely low.

### B. Fine

 The fine imposed by the circuit judge is Twenty Five Thousand and No/100 ($25,000.00) Dollars. Any component of a sanction must be directly related to the contemptuous conduct and the loss incurred by the offended party. There is no reasonable relationship to the contempt of the defendants and the imposition of a Twenty Five Thousand and No/100 ($25,000.00) Dollar fine. We reverse the fine imposed.

### C. Incarceration

 Incarceration under certain factual circumstances may be included as a component of civil contempt. Strict parameters should be placed on the use of incarceration as a part of civil contempt. In *Harris–Jenkins v. Nissan Car Mart, Inc.,* 348 S.C. 171, 557 S.E.2d 708 (Ct.App.2001), this Court enunciated the constitutional concernment of the use of

imprisonment under the aegis and ambit of civil contempt. *Harris–Jenkins* annunciates:

> We note and emphasize that South Carolina law does not permit a person to be held in contempt for failure to pay a civil debt, which has arisen solely out of a contractual obligation. *Sanders v. Sanders*, 30 S.C. 229, 9 S.E. 97 (1889). Furthermore, the Constitution of South Carolina provides "[n]o person shall be imprisoned for debt except in cases of fraud." S.C. Const. art. I § 19; *see also Carter v. Lynch*, 429 F.2d 154 (4th Cir.1970); *Stidham v. DuBose*, 128 S.C. 318, 121 S.E. 791 (1924).

▪ Incarceration should never be imposed due to the simplistic failure of an individual to pay a civil debt. Additionally, imprisonment is not authorized for the failure to comply with a settlement agreement in the absence of fraud or bad faith.

## VII. REMAND

We affirm the award of attorney's fees. However, the severity of the sanctions imposed by way of fine or possible incarceration is troubling. Consequently, we reverse the imposition of the fine and possible incarceration. Because we conclude the circuit judge may impose a fine and incarceration in this scenario, we remand to the circuit judge for the purpose of reviewing the imposition of reasonable sanctions for contempt as follows:

(1) ascertain with exactitude the financial condition of the defendants; and

(2) evaluate defendants' contumacious conduct under the general principles of *Curlee v. Howle*, 277 S.C. 377, 287 S.E.2d 915 (1982), and *Shillitani v. U.S.*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); and

(3) impose sanctions that are directly and proximately connected to Cloyd's contemptuous conduct.

Irrefutably, sanctions should be imposed upon Cloyd.

## CONCLUSION

Accordingly, the decision of the circuit court judge is **AFFIRMED IN PART** and **REVERSED IN PART**. We **REMAND** for consideration of an appropriate contempt sanction.

**AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.**

THOMAS, Acting Judge, concurs.

CURETON, J., dissents in a separate opinion.

I respectfully dissent. I would reverse the finding of contempt and the award of attorney fees.

I do not dispute that the Form 4 order is a final order of the court; however, I find the Form 4 order did not incorporate the terms of the settlement, thereby making the settlement agreement an enforceable order of the court. The settlement was announced in open court and noted upon the record. In announcing the settlement, the respondents' attorney stated the following:

> Yes, Sir. The terms are as follows: The defendants in those cases will pay to the plaintiffs in those cases the sum of Eighty–Thousand Dollars ($80,000.00). Sixty–Thousand Dollars ($60,000.00) of that eighty will be paid immediately; twenty thousand will be paid within the next two weeks. So this week, we'll have sixty, the balance will be within the next two weeks. There will be mutual releases, mutual orders for dismissals. Neither party will—after the payment of the eighty-thousand dollars, neither party owes anybody any money. They are completely released from any liability to each other. And the court can go ahead, if it would, and do a form order.

A review of the exchange between the attorneys and the circuit court indicates that no one contemplated that the settlement agreement would be incorporated into the court's order and made an order of the court. There was no request by the attorneys that the court approve the agreement, nor was there a request for the terms of the settlement to be made into a final order of the court. In fact the Form 4 order dismissing the case from the roster was not even signed by the judge who presided over court the day the settlement was read into the record. Instead, the Form 4 order was prepared by the chief administrative judge as a ministerial function—the effect of which was to dismiss the case.

In the present case, Cloyd violated no court order inasmuch as the form order signed by the court on August 15, 2000, merely served to remove the case from the docket. While Cloyd may have failed to comply with the terms of an enforceable settlement agreement, he was not in violation of any specific court order. Therefore, the court did not have authority to hold him in contempt. "A determination of contempt ordinarily resides in the sound discretion of the trial judge." *State v. Bevilacqua,* 316 S.C. 122, 129, 447 S.E.2d 213, 217 (Ct.App.1994) (citing *Whetstone v. Whetstone,* 309 S.C. 227, 420 S.E.2d 877 (Ct.App.1992)). "It is well settled that contempt results from willful disobedience of a court order; and before a person may be held in contempt, the record must be clear and specific as to acts or conduct upon which the contempt is based." *Id.* (citations omitted). "A willful act is defined as one done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say with bad purpose either to disobey or disregard the law." *Id.* (citing *Spartanburg Dep't of Soc. Servs. v. Padgett,* 296 S.C. 79, 82–83, 370 S.E.2d 872, 874).

The circuit court also included language in its order for contempt regarding appellants' possible fraudulent behavior in attempting to circumvent the settlement agreement. I note the language of the petition for contempt and the rule to show cause did not encompass an allegation of fraud. Accordingly, I find notice was not given to the appellants that they would be called upon to defend this allegation, and therefore, this matter was not properly before the circuit court. *See Abbott v. Gore,* 304 S.C. 116, 119, 403 S.E.2d 154, 156 (Ct.App.1991) (due process requires that a litigant be placed on notice of the issues which the court will consider to afford the litigant an opportunity to be heard); *Bass v. Bass,* 272 S.C. 177, 180, 249 S.E.2d 905, 906 (1978) (footnote omitted) (requiring a litigant be placed on notice of the issues which the court is to consider). Moreover, because I find that the Form 4 order does not make a violation of the terms of the settlement agreement enforceable by contempt, the appellants behavior toward the respondents is irrelevant as it pertains to the ability of the court to punish for such behavior. The appellants' alleged behavior can not constitute a basis for contempt.

I would also reverse the circuit court's award of attorney fees to the respondents. I recognize that in a civil contempt proceeding, a contemnor may be required to reimburse a complainant for the costs he incurred in enforcing the court's prior order, including reasonable attorney's fees. *See Poston v. Poston*, 331 S.C. 106, 114, 502 S.E.2d 86, 90 (1998). However, having concluded the court erred in finding Cloyd in contempt, I find no support for the award of attorney's fees. *See Harris–Jenkins v. Nissan Car Mart*, 348 S.C. 171, 176–79 557 S.E.2d 708, 710–12 (Ct.App.2001) (Attorney fees are recoverable only if authorized by contract, statute or court rule. There is no common law right to recover attorney fees. Where a settlement agreement did not provide for the payment of attorney fees to enforce it, the court could not require the breaching party to pay attorney fees as a sanction.)

Accordingly, I would reverse the circuit court's order finding Cloyd in contempt. I would also reverse the award of attorney fees to the respondent.