THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
James Michael Tharington, Respondent,
v.
Elizabeth Votor, Appellant.
 
 
 

Appeal From Horry County
H. T. Abbott, III, Family Court Judge

Unpublished Opinion No. 2005-UP-539
Submitted September 1, 2005  Filed October 11, 2005   

AFFIRMED

 
 
 
Anita Ruth Floyd,  of Conway, for Appellant.
Frederick L. Harris, of Surfside Beach, for Respondent.
 
 
 

PER CURIAM:  In this appeal from a decree of divorce, Elizabeth Votor argues the family court erred in 1) refusing to hold the husband, James Michael Tharington, in contempt, 2) changing the surname of the parties child from Votor to Tharington, and 3) awarding Votor only $2500.00 in attorneys fees.  We affirm.  1
FACTUAL/PROCEDURAL BACKGROUND
Tharington and Votor were married on July 25, 2001.  Votor was pregnant with their child at the time.  The parties had a heated argument on their honeymoon and their relationship never recovered.  During the marriage Tharington spent two to three weeks a month in Tennessee on business.  He left for one such trip the day before the parties child was born.  Once he arrived at the hospital after the child was born by caesarian section, he stayed for thirty minutes.  Tharington did not return to the hospital during Votors five-day hospital stay until the day Votor and the child were to be discharged.  When he arrived at the hospital, Tharington learned that Votor had named their son Aidan John Votor rather than giving the child his surname.  He and Votor argued until she asked hospital personnel to make Tharington leave.  Tharington then left the hospital without Votor or Aidan.  Votor had to call Tharingtons mother and ask her to bring them home.  The parties separated on January 14, 2002, ten days after their sons birth.  
On February 25, 2002, the parties were involved in an altercation at the marital home.  Votor called 9-1-1.  The responding officer, Corporal Dan Flood, testified that the parties gave conflicting stories about how a scratch on Votors arm occurred.  Votor stated Tharington had pushed her, causing her to fall over a trash bag and hit her arm on the wall, but Tharington stated Votor had merely tripped over the bag and fallen.  Corporal Flood testified he did not believe he had probable cause to make an arrest.  He stayed at the residence until Tharington, who had offered to leave, packed up his belongings and left.  
Votor filed with the family court a petition for an order of protection on February 27, 2002.  The parties entered into a consent order providing inter alia that Votor would be entitled to the marital home until the house she owned could be refurbished and that Tharington would be responsible for the cost of refurbishing the house.  Votor was to vacate the marital home upon 48 hours notice by Tharington that the refurbishment was complete.  
Tharington filed a petition for a rule to show cause on March 13, 2002 asserting Votor should be held in contempt for failing to vacate the marital home in accordance with the consent order.  The family court declined to hold Votor in contempt.  
In the meantime, Tharington had filed a complaint for an order of separate maintenance.  He asked for joint custody of Aidan, child support, and possession of the marital home.  Votor filed a counterclaim seeking a divorce on the grounds of adultery and physical cruelty, sole custody of Aidan, equitable distribution of debt, possession of the marital home, and attorneys fees.  
Votor left the marital home to return to her own house.  Once there, she replaced the carpets, had new appliances installed, and took other steps to improve the home.  At the final hearing, she sought to have Tharington held responsible for these improvements under the consent order.  
In the final decree of divorce, the family court granted the parties a divorce on the ground of one years continuous separation, awarded Votor custody of Aidan and standard visitation to Tharington, and set child support.  At Tharingtons request, the family court ordered Aidans birth certificate be amended to read Aidan John Tharington.  The court held Tharington was not responsible for the funds Votor expended improving her home.  It also made other rulings on the equitable distribution of the marital estate and debt.  Finally, the court ordered Tharington to be responsible for $2500.00 of Votors attorneys fees.  
Both parties filed motions to alter or amend.  The family court clarified visitation and changed its ruling to provide Tharington must reimburse Votor for the tires she purchased for his vehicle.  Other than those rulings, the court reaffirmed its previous rulings.  This appeal followed.
STANDARD OF REVIEW   
On appeal from an order of the family court, this court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence.  Hopkins v. Hopkins, 343 S.C. 301, 304, 540 S.E.2d 454, 456 (2000).  However, this broad scope of review does not require us to ignore the findings of the family court.  Haselden v. Haselden, 347 S.C. 48, 58, 552 S.E.2d 329, 334 (Ct. App. 2001).  Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. Id.
DISCUSSION
1.     Contempt
Votor argues the family court erred when it declined to hold Tharington in contempt for failing to comply with the consent order that he would refurbish her house.  We disagree.  
A determination of contempt lies within the sound discretion of the trial judge.  Cheap-Os Truck Stop, Inc. v. Cloyd, 350 S.C. 596, 607, 567 S.E.2d 514, 519 (Ct. App. 2002).  A determination of contempt is a serious matter and should be imposed sparingly.  Haselwood v. Sullivan, 283 S.C. 29, 32, 320 S.E.2d 499, 501 (Ct. App. 1984).  Contempt results from willful disobedience of a court order.  Cheap-Os Truck Stop, Inc., 350 S.C. at 607, 567 S.E.2d at 519.  In order for a person to be held in contempt, the record must be clear and specific as to acts or conduct upon which the contempt is based.  Id.  A willful act is one done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say with bad purpose either to disobey or disregard the law.  Id. at 608, 567 S.E.2d at 520. 
During the parties marriage, Votor rented out the house in which she had lived before the marriage.  The tenants vacated the house around the time of the parties separation.  In the March 5, 2002 consent order, the parties agreed:

[Votor] is entitled to the marital [home] as to such time the non-marital home can be refurbished.  At the time the home is refurbished [Votor] will have 48 [hours] notice by [Tharington] and she will depart the marital home.  [Tharington] is responsible for the costs associated with the refurbished home.  

Tharington testified he had the walls of Votors house painted and had the carpets professionally steam cleaned.  Tharington repaired holes in the sheetrock, a broken glass door in the medicine cabinet, and the broken door on the bathroom vanity, and replaced doorknobs.  He also installed a washer and dryer himself.  Tharington acknowledged that he had agreed to replace the carpets if needed, but insisted the carpets cleaned up fine.  In addition, he testified that all of the appliances worked.  
Votor testified she wanted Tharington to replace the carpet because her tenants dogs had urinated on them.  She stated the pet stains on the carpet quickly reappeared.  She purchased new carpet herself and had it installed.  She also purchased and had installed new appliances including a refrigerator, dishwasher, stove, and washer.  She had a microwave installed over the stove and new shelves installed in the closet.  She and her friends repainted the inside of the house.  Votor also presented her bills for having cable and utilities hooked up to her house and for $4900.00 in furniture.  She asked the court to hold Tharington responsible for these expenses under the consent order.  
The court, however held it would not be appropriate to make any award for [Tharington] to pay [Votor] as to the alleged costs.  To do so would require an interpretation of the term refurbishment and the testimony presented is insufficient to establish that the parties intended for [Tharington] to make such major improvements to [Votors] home.  
We find no abuse of discretion in this ruling.  Tharington testified that he had completed the refurbishment as required by the consent order while Votor testified his work was incomplete.  Although the parties testimony is contradictory, we find the evidence supports the family courts holding that Tharington should not be held responsible for the extensive improvements Votor made to her house.  
Votor asserts that when the family court declined to hold her in contempt on Tharingtons rule to show cause, it tacitly held that Tharington had not completed the refurbishment in accordance with the parties agreement.  However, at the hearing on the rule, the family court explained that it was declining to hold Votor in contempt because there had been no meeting of the minds and the parties were not in agreement as to what the word refurbish meant.  This finding in no way supports Votors contention that Tharington should be held in contempt.  Rather, the family court declined to hold either party in contempt of the order because, as there was no agreement between the parties, neither party was acting in willful disobedience of the order.
Accordingly, we find the family court did not err in declining to hold Tharington in contempt and refusing to make Tharington responsible for the funds Votor expended improving her house.    
2.     Name change
Votor argues the family court erred in ordering the parties sons name be changed from Aidan John Votor to Aidan John Tharington.  We disagree.  
Votor contends the family court did not have authority to grant the name change because Tharington never requested such relief in his pleading.  As Votor failed to raise this issue to the family court, it is not preserved for our review.  See  Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.).   
The family court should grant a request to change a childs surname only if the change promotes the childs best interests and welfare.  Mazzone v. Miles, 341 S.C. 203, 210, 532 S.E.2d 890, 893 (Ct. App. 2000).  The burden of proving that the change will further the childs best interests lies on the parent seeking to change the childs surname.  Id.  Both parents have an equal interest in the child bearing their respective surname.  Id. at 211-12, 532 S.E.2d at 894.
In Mazzone, this court set out the following factors for the court to consider in a request for childs name to be changed:  

(1) The length of time that the child has used the present surname; (2) the effect of the change on the preservation and development of the childs relationship with each parent; (3) the identification of the child as part of a family unit; (4) the wishes of the parents; (5) the stated reason for the proposed change; (6) the motive of the parents and the possibility that the use of a different name will cause insecurity or a lack of identity; (7) the difficulty, harassment, or embarrassment that the child may experience when the child bears a surname different from the custodial parent; (8) the  preference of the child if the child is of an age and maturity to express a meaningful preference; and (9) the degree of community respect associated with the present and proposed surname.   

Id. at 210-11, 532 S.E.2d at 893-94. 
Applying the above factors that are applicable in this case, we find the change of Aidans surname to Tharington is in his best interest.  Aidan was barely two years old at the time the family court ordered the change of his surname.  It is unlikely he had developed a strong identification with the surname Votor at such a young age.  There is no indication in the record that the change of Aidans last name to Tharington would weaken his relationship with Votor, who appears to be a devoted mother.  Tharington also appears to be an involved parent, exercising the visitation awarded to him and requesting more.  Although Tharingtons relationship with Aidan would probably not be damaged by Aidan retaining the name Votor, the change to Tharington may even strengthen the bond between father and son.  
For the third factor, identification as a family unit, we find no preference in name.  Votor does have a daughter from a previous relationship, but as this child has the surname of her father, she and Aidan would have different surnames even if Aidan had the name Votor.  
As to the wishes of the parents, it is obvious both want Aidan to bear his or her own surname.  Next, we consider the parties motives.  Tharington testified the reason he married Votor was for his son and that it was very important to him for his son to have his last name.  There is evidence in the record that although Votor never changed her name on her social security card or drivers license, she did in fact use the name Tharington.  She changed her name to Tharington for her banking and checked into the hospital under the name Tharington when she delivered Aidan.  The hospital bills and records list Aidan as Baby Boy Tharington.  Thus, the record indicates Tharington asked for the change in keeping with the parties understanding of what the childs name would be.
Votor testified that she gave Aidan her surname because by the time she named him, she knew she was going to be a single parent and she did not want to have three different last names in her household.  However, Votors attorney gave another motive for the name in a letter dated March 20, 2002, writing:  In a moment of frustration and anger, Ms. Votor did not give Aidan Mr. Tharingtons last name but instead used her name.  This was because Mr. Tharington was in Tennessee with a paramour throughout the Christmas holidays as well as at the time of the birth of the parties child.  
Considering the letter, the family court found Votors explanation for giving Aidan her surname was disingenuous at best.  The evidence shows a great deal of animosity between the parties at the time of Aidans birth and Votors decision on his name.  On the day before Aidan was born, Tharington left for Tennessee on business, planning to return for the scheduled caesarian section on the following Monday.  Votor testified she begged him not to leave because she believed the baby would be born earlier.  Tharington did not return before Votor underwent an emergency cesarian section the next day.  Tharington came to the hospital that day, but left thirty minutes later after he and Votor had an argument.  He did not return during Votor and Aidans five-day hospital stay until the day they were to be discharged.  Votor testified that it was not until this fifth day she decided to give Aidan the last name Votor.     
We agree with the family court, which was in a better position to judge Votors credibility, that her explanation for the naming was disingenous and her actual motive was anger and frustration with Tharington, as stated in her attorneys letter. 
Tharington testified that Votors giving the child her surname has been a bone of contention since he found out about it.  The change of Aidans name to Tharington in accordance with what appears to have been the intention of the parties during the pregnancy may in fact alleviate some of the animosity between the parties.   
The final applicable factor is the difficulty, harassment, or embarrassment that the child may experience when the child bears a surname different from the custodial parent.  Votor currently is the custodial parent.  However, Tharington has standard visitation with his son and provides insurance for him.  Although the child may experience some difficulty, harassment, or embarrassment from not having the same last name as his mother, he could also experience difficulty, harassment or embarrassment from not having the last name of his father, with whom he spends considerable time.  
Considering the relevant factors, we find it is in Aidans best interest that he be given the name Tharington.  Accordingly we affirm the family courts order changing his name from Aidan John Votor to Aidan John Tharington.2 
3.     Attorneys fees
Finally, Votor argues the family court erred in awarding her only $2500.00 in attorneys fees.  We disagree.  
An award of attorneys fees is within the sound discretion of the family court.  See Bowen v. Bowen, 327 S.C. 561, 563, 490 S.E.2d 271, 272 (Ct. App. 1997).  In determining the reasonable amount of attorneys fees to award, the court should consider the nature, extent, and difficulty of the services rendered, the time necessarily devoted to the case, counsels professional standing, the contingency of compensation, the beneficial results obtained, and the customary legal fees for similar services.  Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).
The family court held Votor was entitled to a partial reimbursement of attorneys fees, finding at least a portion of the fees incurred were due to the non-cooperation and lack of truthfulness on behalf of Tharington in regards to financial matters.  In addition the family court found Tharington was in a much better financial position to satisfy an award of attorneys fees and any award of fees would have less impact on Tharington than Votor.  The court then thoroughly addressed the Glasscock factors.  Importantly, the court found Votor was unsuccessful on almost all monetary issues and the issue of the childs last name and was only successful in limiting Tharingtons request to spend more than standard visitation with his only child.  
In reviewing the factors, we find no abuse of discretion in the family court awarding Votor $2500.00 in attorneys fees.  
CONCLUSION
For the above stated reasons, the order of the family court is 
 AFFIRMED.
ANDERSON, HUFF, and WILLIAMS, JJ., concur. 
     

1 We decide this case without oral argument pursuant to Rule 215, SCACR.
2 In determining Aidans last name should be changed to Tharington, the family court relied on South Carolina Code section 20-1-70 (1985).  Although we find this section not applicable to the present case, we have concluded the change in name is in the childs best interest and thus affirm the family courts decision.  See IOn, L.L.C. v. Town of Mt. Pleasant, 338 S.C. 406, 417, 526 S.E.2d 716, 722 (2000) (stating that the appellate court may affirm for any reason appearing in the record).