713 S.E.2d 306

**Marsha Holt WILSON, Respondent,**

v.

**Wallace McDONALD, Appellant.**

No. 4836.

Court of Appeals of South Carolina.

Submitted July 1, 2010.

Decided June 1, 2011.

Peter George Currence, of Columbia, for Appellant.

Nancy J. Thomason, of Anderson, for Respondent.

Carolyn Elaine Galloway, of Anderson, Guardian ad Litem.

FEW, C.J.

Wallace McDonald [1] appeals the family court's order denying his request to change his daughter's last name from Wilson to Wilson–McDonald. We affirm.[2]

## FACTS/PROCEDURAL HISTORY

McDonald and Marsha Holt Wilson conceived a child together, but never married. When Wilson learned she was pregnant, McDonald ended the relationship. He did not support Wilson during the pregnancy and was not present for their daughter's birth on June 6, 2005. Wilson named their daughter without McDonald's input, giving the daughter the last name "Wilson."

On July 5, 2005, Wilson filed a complaint requesting full custody of her daughter, child support, and reimbursement for medical expenses associated with the pregnancy. McDonald filed an answer and counterclaim requesting joint custody and visitation. Additionally, McDonald requested the family court change his daughter's last name to Wilson–McDonald. Wilson and McDonald subsequently agreed on all issues except changing their daughter's last name. The family court conducted a hearing on that issue alone.

McDonald testified at the hearing that a hyphenated surname would be in his daughter's best interest because the

1. We changed the names of the parents to protect the privacy of the child.

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

change would (1) allow her to feel part of his family unit, (2) enhance her reputation in the community, and (3) prevent her from losing her identity with him. McDonald explained that under the visitation agreement, the child spent six out of every fourteen days in his home with her half-siblings, and the hyphenation would help her identify more with his family.

Wilson disagreed that the proposed name change would further her daughter's best interest. Wilson explained that just as McDonald was intentionally absent from their daughter's birth, she intentionally excluded him from the birth certificate because she did not want her daughter to share the last name of a father who was not involved in the daughter's life. Wilson testified that she had been hurt by the fact that McDonald abandoned her during the pregnancy and provided her no support other than offering to pay for an abortion. In addition, Wilson considered that McDonald had relinquished his parental rights to twin boys years earlier. After Wilson explained these initial reasons for choosing not to name her daughter "McDonald," she went on to explain that a name change now, when daughter was three years old and knew her last name, would be stressful for the child.

The guardian ad litem also testified at the hearing. When the guardian met with the daughter, the little girl was wearing monogrammed clothes and carried a monogrammed purse. The guardian asked if she knew her name, and the daughter "proudly said" her current full name. According to the guardian, the daughter identified with both parents and recognized she had two family units. The guardian did not articulate any reason why the proposed name change would promote the child's best interest.

After hearing from both parents, the guardian, and other witnesses, the family court issued an order denying the name change. McDonald appeals, arguing the proposed hyphenation of the child's last name promotes her best interest. We review the family court's decision de novo. *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).

## LAW/ANALYSIS

Section 15–49–10(B) of the South Carolina Code (2005) permits a parent to petition the family court to change the name of a minor child. "The court shall grant the petition

if it finds that it is in the best interest of the child." S.C.Code Ann. § 15–49–10(B). The parent seeking a name change bears the burden of proving the change furthers the child's best interests. *Stradford v. Wilson,* 378 S.C. 300, 303–04, 662 S.E.2d 491, 493 (Ct.App.2008) (citing *Mazzone v. Miles,* 341 S.C. 203, 210, 532 S.E.2d 890, 893 (Ct.App.2000)).

In *Mazzone,* this court identified nine factors to consider when determining whether a child's name should be changed. 341 S.C. at 210–11, 532 S.E.2d at 893–94. These factors, which are not exclusive, are as follows:

> (1) the length of time that the child has used the present surname; (2) the effect of the change on the preservation and development of the child's relationship with each parent; (3) the identification of the child as part of a family unit; (4) the wishes of the parents; (5) the stated reason for the proposed change; (6) the motive of the parents and the possibility that the use of a different name will cause insecurity or a lack of identity; (7) the difficulty, harassment, or embarrassment that the child may experience when the child bears a surname different from the custodial parent; (8) the preference of the child if the child is of an age and maturity to express a meaningful preference; and (9) the degree of community respect associated with the present and proposed surname.

*Id.; see also Stradford,* 378 S.C. at 303–04, 662 S.E.2d at 493 (applying the *Mazzone* factors in determining it was not in a child's best interest to change child's surname from that of her mother's to her father's).

With regard to the first factor, the child was three years old at the time of the hearing and is now almost six years old. "Wilson" has been her last name since birth. The child knew her name even at the time of the hearing, and according to the guardian, announced it with pride. We recognize that Mc-Donald requested the name change when the child was an infant. However, his failure to support Wilson during her pregnancy, his choice not to attend his daughter's birth, and his failure to take any action on his daughter's behalf until after he was served with a lawsuit from Wilson,[3] all invited the

---

3. *See Mazzone,* 341 S.C. at 211, 532 S.E.2d at 894 (discussing the importance of the fact the father did not request the name change until after the mother filed an action).

difficulty he now faces in proving she would be better off with a different last name.

With regard to the second and third factors (relationship with each parent and identification as a family unit), the hyphenation arguably better preserves her relationship with each parent and identity with each family unit. However, according to the guardian, the daughter recognizes both family units already, despite bearing only her mother's last name.

The fifth and sixth factors (reason for the change and motives of the parties), warrant discussion. McDonald's stated reason for wanting the change was that he believed the daughter would better identify with his family and that she would benefit in the community from sharing a name similar to his. As noted in the analysis of the first factor, McDonald could have championed these reasons when the birth certificate was filled out, but he chose not to participate. Wilson's initial motive for excluding "McDonald" from the birth certificate—her fear that McDonald would not be present in her daughter's life—was legitimate considering McDonald's history with his twin sons and his absence during the pregnancy and birth here.

Regarding the seventh factor (the difficulty, harassment, or embarrassment the child may experience if the child bears a surname different from the custodial parent), Wilson expressed concern that a hyphenated name was unusual in Anderson County and the combination of names would result in a long, cumbersome surname for her daughter.[4] We find there was little evidence that bearing the mother's last name alone would be any less embarrassing than having a hyphenated last name. In either event, the child has a name that is different from at least one of her parents. Indeed, when parents create a situation like this, it is beyond the power of the court system in a name-change case to eradicate all of the stigma that might be associated with it.

---

4. Wilson also claimed the hyphenated name would prevent monogramming. However, we are not impressed with the monogramming argument. We can envision no scenario in which a child's monogram would be important enough to influence a court's decision about which last name best promotes her interests.

McDonald argues that the ninth factor—the degree of community respect associated with the present and proposed surname—weighs heavily in favor of hyphenation because he and his family are well known real estate agents in the community and have made significant contributions to charitable causes. Wilson disagreed that McDonald's last name is well-respected. Based on our review of the record, we find that both parties have good reputations in the community, and while a combination of their last names might better allow their daughter to benefit from the goodwill attached to each last name, this marginal benefit, when weighed against the length of time the child has had her present last name, is not significant enough to satisfy McDonald's burden of proving that a name change would promote the child's best interest.

Having considered the *Mazzone* factors, we agree with the family court's conclusion that changing the child's last name to Wilson–McDonald would not be in her best interest. Accordingly, the family court's order is

**AFFIRMED.**

HUFF and THOMAS, JJ., concur.