677 S.E.2d 621

**Michael R. GARTSIDE, Respondent/Appellant,**

v.

**Ellen T. GARTSIDE, Appellant/Respondent.**

**No. 4537.**

Court of Appeals of South Carolina.

Heard March 17, 2009.

Decided April 29, 2009.

38

H. Stanley Feldman, of Charleston, for Appellant/Respondent.

Paul Daniel Schwartz, of Charleston, for Respondent/Appellant.

WILLIAMS, J.

In this family law action, we determine whether the family court erred in (1) reducing Michael Gartside's (Husband) alimony obligation and (2) failing to award attorneys' fees and costs to Husband. We affirm.

## FACTS/PROCEDURAL HISTORY

Husband and Ellen Gartside (Wife) divorced in 2003. At the time of the divorce, Husband was employed by the Carolina Yacht Club (the Club) and Wife was employed as a public school teacher. The final decree stated Husband and Wife earned gross monthly wages of $9,079 and $3,814, respectively. The final decree awarded Wife periodic alimony in the amount of $1,775 per month.

At the time of the divorce, Husband had been making $108,948 per year at the Club according to his financial declaration. From December 18, 2003 until October 1, 2005,

Husband made his alimony payments to Wife. However, Husband lost his job at the Club in October 2005, at which time he was making between $105,000 and $106,000, according to his testimony.[1] After being let go by the Club, Husband found a job working for the Muhler Company (Muhler) in November 2005, where he received a reported salary of $60,000 per year.

On January 17, 2006, Husband, through counsel, mailed Wife a letter advising her he would be able to continue paying the current alimony only through April 28, 2006, with his severance package from the Club, but thereafter, he would be unable to continue to pay the $1,775 per month.

On March 17, 2006, Husband filed an action in the Charleston County family court seeking a reduction in his alimony obligation, alleging a substantial and material change in circumstances. The complaint alleged that Husband had only been able to maintain his alimony payments because of his severance package, which was to expire in April 2006.

The case was tried in April 2007 before the family court. Husband and Wife submitted their financial declarations to the family court and testified as to their respective financial situations. As of February 1, 2007, Husband's gross monthly income was $5,200, while his net monthly income was $3,488. His total monthly expenses were $7,372. As of February 18, 2007, Wife's gross monthly income was $5,249, while her net monthly income was $3,787. Her total monthly expenses were $4,045.

At trial, Husband was asked about his efforts at finding employment after the Club terminated him. Husband testified that "hundred thousand dollar club jobs" existed in the tri-county area, but none were available. At one point, Husband submitted his resume to the Country Club of Charleston, but was not offered a position. Husband further testified he believed jobs within his profession existed outside of the tri-county area that would pay approximately what the Club had paid. Husband made no efforts, however, to interview outside of the tri-county area. Husband also testified that, before settling in Charleston in 1982, he had relocated to Pennsylva-

---

1. The parties do not dispute Husband lost his job at the Club through no fault of his own.

nia, Colorado, Georgia, and Texas, all in furtherance of his career.

After considering all of the evidence, the family court reduced Husband's alimony obligation from $1,775 per month to $800 per month. The court stated:

[Husband and Wife] moved to Charleston, S.C., in 1982. . . . [T]hey have raised their children here, have owned property here, have had their work careers here, have put down roots, have made friends and have established themselves as citizens of Charleston County[,] and if [they] were still living together and [Husband] had lost his job, I have serious doubts they would move away just so they could continue making the same salary. . . .

[Husband] testified that there were no comparable jobs available in the Charleston area[,] . . . and I find no compelling reason that [Husband] should be forced to leave the environment he has known for 25 years to seek employment which might pay the same as he was receiving in Charleston at his previous employment.

Husband submitted an affidavit in support of his request for attorneys' fees and costs, which the family court denied. This appeal followed.

## STANDARD OF REVIEW

An appellate court reviewing a family court order may find facts in accordance with its own view of the preponderance of the evidence. *Robinson v. Tyson*, 319 S.C. 360, 362, 461 S.E.2d 397, 398–99 (Ct.App.1995). This broad scope of review does not, however, require the reviewing court to disregard the findings of the family court, which, having seen and heard the witnesses, is in a better position to examine their credibility. *Skinner v. King*, 272 S.C. 520, 522–23, 252 S.E.2d 891, 892 (1979). Nor does this broad review relieve an appellant of his or her burden of convincing the appellate court that the family court committed error. *Id.* at 523, 252 S.E.2d at 892.

## LAW/ANALYSIS

### 1. Whether the family court erred in reducing Husband's alimony obligations?

██ Wife argues the family court abused its discretion in reducing Husband's alimony obligation. We disagree.

42

■ The purpose of alimony is to provide the ex-spouse a substitute for the support that was incident to the former marital relationship. *Croom v. Croom*, 305 S.C. 158, 160, 406 S.E.2d 381, 382 (Ct.App.1991). The question of whether to increase or decrease alimony based on a finding of changed circumstances is a matter committed to the sound discretion of the family court. *Brunner v. Brunner*, 296 S.C. 60, 64, 370 S.E.2d 614, 617 (Ct.App.1988). The family court's determination of whether to modify support will not be disturbed on appeal unless the family court abused its discretion. *Id.* An abuse of discretion occurs when the family court's decision is controlled by some error of law or where the order, based upon findings of fact, is without evidentiary support. *McKnight v. McKnight*, 283 S.C. 540, 543, 324 S.E.2d 91, 93 (Ct.App.1984).

■ In order to justify a modification of an alimony award, the changes in circumstances must be substantial or material. *Thornton v. Thornton*, 328 S.C. 96, 111, 492 S.E.2d 86, 94 (1997) (citing *Calvert v. Calvert*, 287 S.C. 130, 138, 336 S.E.2d 884, 888 (Ct.App.1985)). In determining whether the change in circumstances warrants a modification, several considerations relevant to the initial determination of an alimony award may be applied in the modification context as well, including the parties' standard of living during the marriage, each party's earning capacity, and the supporting spouse's ability to continue to support the payee spouse. *Penny v. Green*, 357 S.C. 583, 589, 594 S.E.2d 171, 174 (Ct.App.2004).

We agree with the family court that Husband's change of circumstances constitutes a substantial and material change. Moreover, because we find evidentiary support for its decision, we see no abuse of discretion in the family court's lowering Husband's alimony obligations from $1,775 per month to $800 per month. First, Husband's annual income has been reduced from $108,948 at the time of the divorce to $60,000. *See Miles v. Miles*, 355 S.C. 511, 519, 586 S.E.2d 136, 140 (Ct.App.2003) (affirming family court's reduction in ex-husband's monthly alimony from $4,583 to $2,500 in light of the fact ex-husband's monthly income had been reduced from $18,100 to less than $14,000). Second, because Husband's income was reduced to $60,000 per year, his monthly expenses now exceed his monthly income by almost $4,000. Therefore, even if Husband were

to cut out some of what Wife describes as his "discretionary" expenses, he would still remain in debt at the end of each month. Third, Wife's overall financial situation has arguably improved since the divorce. Not only have her monthly wages increased slightly since the divorce from $3,263 to $3,474, but she testified she is no longer receiving medical treatment for her emotional condition, which she was at the time of the divorce. Taken together, we find these facts support the family court's decision to lower Husband's alimony obligation.

## 2. Whether Husband's former income should have been imputed?

### a. Preservation

■ Husband argues this issue is not preserved for appeal because it was not raised to the family court prior to Wife's Rule 59(e), SCRCP, motion to alter judgment. We disagree.

■ But for a very few exceptional circumstances, an appellate court cannot address an issue unless it was raised to and ruled upon by the family court. *Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 510–11, 598 S.E.2d 712, 715 (2004). "Imposing this preservation requirement on the appellant is meant to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments." *I'On, L.L.C. v. Town of Mount Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000). As such, a party cannot use a Rule 59(e) motion to present to the family court an issue the party could have raised prior to judgment but did not. *Crary v. Djebelli*, 321 S.C. 38, 43, 467 S.E.2d 128, 131–32 (Ct.App.1995), *rev'd on other grounds*, 329 S.C. 385, 496 S.E.2d 21 (1998).

Although the first time the phrase "whether income should be imputed" appeared in the pleadings was in Wife's Rule 59(e) motion, we feel this issue is nevertheless preserved because the issue of imputed income was both raised to and ruled upon by the family court. First, counsel for Wife asserted at trial that "the number one consideration [in this case] is that [Husband] is underemployed" because "[Husband] chooses to stay with his fiancée in Charleston and not ... look anywhere else." Underemployment and imputation of income go hand in hand. *See Patel v. Patel*, 359 S.C. 515, 532, 599 S.E.2d 114, 123 (2004) ("It is proper to impute income to a

party who is voluntarily unemployed or underemployed."); *Penny,* 357 S.C. at 592, 594 S.E.2d at 175 ("The family court's imputation of income to Husband was tantamount to finding Husband underemployed."). Thus, by raising the issue of underemployment, we believe Wife sufficiently raised the issue of income imputation. Second, the issue of income imputation was ruled upon by the family court when it justified its alimony reduction, at least in part, by the fact that there "were no comparable jobs available in the Charleston area" and there was "no compelling reason that [Husband] should be forced to leave the environment he has known for 25 years to seek employment which might pay the same as he was receiving in Charleston." This was an implicit rejection of the argument that Husband was underemployed. *See Pryor v. Nw. Apartments, Ltd.,* 321 S.C. 524, 528 n. 2, 469 S.E.2d 630, 633 n. 2 (Ct.App.1996) (finding an issue preserved when the circuit court implicitly ruled on and rejected the respondent's argument). Accordingly, we find the issue is preserved.

### b. Merits

█ Wife argues the family court erred in failing to impute to Husband an income comparable to that of his former position at the Club when modifying his alimony obligations. We disagree.

█ Whether termed voluntary underemployment, imputation of income, or the failure to reach earning potential, the case law is clear that when a payor spouse seeks to reduce support obligations based on his diminished income, a court should consider the payor spouse's earning capacity. *Kelley v. Kelley,* 324 S.C. 481, 488, 477 S.E.2d 727, 731 (Ct.App.1996). The failure to reach earning capacity, by itself, does not automatically equate to voluntary underemployment such that income must be imputed. *Id.* at 488–89, 477 S.E.2d at 731. Although some of the precedents appear inconsistent, the common thread in cases when actual income versus earning capacity is at issue is that courts must closely examine the payor spouse's good faith and reasonable explanation for the decreased income. *Id.* at 489, 477 S.E.2d at 731; *see Mazzone v. Miles,* 341 S.C. 203, 209, 532 S.E.2d 890, 893 (Ct.App.2000) (declining to impute more than minimum wage to husband when there was no evidence that the loss of his job was due to

any wrongdoing, or that his decision to start his own business was motivated by a desire to avoid his child support obligations). However, a payor spouse can be found to be voluntarily underemployed even in the absence of a bad faith motivation. *Arnal v. Arnal,* 371 S.C. 10, 13, 636 S.E.2d 864, 866 (2006).

Here, Wife does not dispute Husband lost his job at the Club through no fault of his own. Husband networked for other club positions in the Charleston area but found no other positions available. At one point, Husband submitted his resume to the Country Club of Charleston, but to no avail. Other than this, Husband has not pursued positions at any other clubs outside of Charleston. Instead, he accepted employment outside of his profession at Muhler at a much lower salary than he received at the Club. Husband's explanation for not pursuing employment at his former salary is that he does not wish to relocate from Charleston, where he has lived since 1982. As the family court pointed out, Husband "ha[s] put down roots, ha[s] made friends and ha[s] established [himself] as [a] citizen[ ] of Charleston County." We find this to be a good faith, reasonable explanation for his reduced income.

To impute to Husband his former income in this case would essentially force him to move outside of Charleston. Courts are reluctant to invade a party's freedom to pursue the employment path of their own choice or impose unreasonable demands upon parties. *Kelley,* 324 S.C. at 489, 477 S.E.2d at 731; *see also LaFrance v. LaFrance,* 370 S.C. 622, 647, 636 S.E.2d 3, 16 (Ct.App.2006) (holding the family court erred by imputing $100,000 income to husband when the available positions identified by wife's expert witness as paying that salary would all require husband to move away from his current residence and his three minor children). Other jurisdictions are similarly reluctant to impute income based on the availability of jobs that require relocation. *See Budnick v. Budnick,* 42 Va.App. 823, 595 S.E.2d 50, 59 (2004) (finding no error in trial court's refusal to impute lost income to wife who refused to accept a job transfer to a different city within the state).

Furthermore, the South Carolina Child Support Guidelines (the Guidelines) address the issue of determining earning

capacity. The Guidelines define "income" as "the actual gross income of the parent if employed to full capacity, or potential income if unemployed or underemployed." S.C.Code Ann. Regs. 114–4720(A) (Supp.2008). The Guidelines further provide:

> In order to impute income to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earning level of the parent based on that parent's recent work history, occupational qualifications and *prevailing job opportunities and earning levels in the community.*

*Id.* (emphasis added). This suggests that, in determining earning capacity for purposes of imputing income, a community standard should be applied when determining the availability of employment.

In sum, we find no error in the family court's decision not to impute to Husband his former income.

**3. Whether the trial court erred in reducing Husband's alimony obligations by 55% when Husband's loss of income was approximately 40%?**

Wife argues even if the reduction in alimony, in and of itself, was not an abuse of discretion, the family court nevertheless abused its discretion in reducing Husband's alimony obligations by fifty-five percent when Husband's loss of income was only forty percent. However, Wife has cited no legal authority to support the argument that this was an error of law. As such, this argument is conclusory, and such arguments are deemed abandoned on appeal. *See Mulherin–Howell v. Cobb,* 362 S.C. 588, 600, 608 S.E.2d 587, 593–94 (Ct.App.2005) (finding party abandoned an issue on appeal due to failure to cite any supporting authority and making only conclusory arguments).

**4. Whether the family court erred in failing to award Husband attorneys' fees and costs?**

Husband argues the family court abused its discretion in refusing to award him attorneys' fees and costs. We disagree.

An award of attorneys' fees rests within the sound discretion of the family court and will not be disturbed on appeal absent an abuse of discretion. *Upchurch v. Upchurch,* 367 S.C. 16, 28, 624 S.E.2d 643, 648 (2006). In determining whether attorneys' fees should be awarded, the following factors should be considered: (1) the party's ability to pay his or her own attorneys' fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the attorneys' fees on each party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992) (citing *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991)). A beneficial result will not secure an award of attorneys' fees where the other factors do not support such an award. *Mazzone,* 341 S.C. at 214, 532 S.E.2d at 895.

The family court considered the appropriate factors in its final order and held that "each party should be responsible for paying his and her own respective attorneys' fees." Although Husband's attorney obtained a beneficial result, we believe in light of the other factors, the family court did not abuse its discretion in denying Husband's request for attorneys' fees. According to Husband's affidavit in support of attorneys' fees and costs, his attorneys' fees totaled $12,064.92. According to Wife's financial declaration dated February 18, 2007, she earns a gross income of only $3,474 per month as a school teacher. Thus, Husband's attorneys' fees represent over three months worth of pay for Wife. Moreover, Wife is in no better position to pay Husband's fees than Husband is to pay his own, as Husband earns $60,000 per year at Muhler. Accordingly, we find the family court did not abuse its discretion in refusing to award Husband attorneys' fees and costs.

## CONCLUSION

Accordingly, the family court's decision is

**AFFIRMED.**

HUFF and KONDUROS, JJ., concur.