**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Justin Martin, Respondent,

v.

Katie Valipour, Appellant.

Appellate Case No. 2019-001932

———————

Appeal From Horry County
Timothy H. Pogue, Family Court Judge

———————

Unpublished Opinion No. 2023-UP-080
Submitted February 1, 2023 – Filed March 8, 2023

———————

**AFFIRMED**

———————

Randall K. Mullins, of Mullins Law Firm, PA, of N. Myrtle Beach, for Appellant.

Julaan Derrick, of Julaan Derrick, Attorney at Law, of Conway, and Thomas J. Rode, of Thurmond Kirchner & Timbes, P.A., of Charleston, both for Respondent.

———————

**PER CURIAM:** In this child custody case, Katie Valipour (Mother) appeals the family court's custody order, arguing the family court erred in awarding (1) sole

custody of the parties' minor son (Son) to Justin Martin (Father) and (2) attorney's fees to Father. We affirm.

1. We find the family court did not err in awarding Father sole custody of Son. Initially, we note Mother's arguments as to the reliability of the testimony of Dr. Goldschmidt, Father's expert, are unpreserved for review because they were not raised to the family court. *See Gartside v. Gartside*, 383 S.C. 35, 43, 677 S.E.2d 621, 625 (Ct. App. 2009) ("But for a very few exceptional circumstances, an appellate court cannot address an issue unless it was raised to and ruled upon by the family court."); *id*. ("As such, a party cannot use a Rule 59(e) motion to present to the family court an issue the party could have raised prior to judgment but did not."). Likewise, we do not believe Mother's argument that the guardian ad litem (GAL) was biased against her is preserved for our review because Mother failed to object to the GAL's testimony or to move for the GAL's recusal. *See Spreeuw v. Barker*, 385 S.C. 45, 70–71, 682 S.E.2d 843, 855–56 (Ct. App. 2009) (finding Father's argument that the family court should not have relied on the guardian's report and recommendation because the guardian "conducted her investigation in a biased manner" unpreserved because "[w]hile Father complained of the Guardian's bias during his testimony, he never made a motion to relieve the Guardian of her duties based on bias").

The remainder of Mother's arguments as to custody boil down to her assertion that the court improperly weighed the evidence. First, we defer to the family court's credibility findings and note the family court found Mother not credible. *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 651–52 (2011) (providing that although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony). We agree with the family court's finding that Mother was not credible due to Mother's conflicting statements and evasive conduct.

Second, we look to the mental health and fitness of each party. *Clark v. Clark*, 423 S.C. 596, 605, 815 S.E.2d 772, 777 (Ct. App. 2018) ("The family court must consider the character, fitness, attitude, and inclinations on the part of each parent as they impact the child. In addition, psychological, physical, environmental, spiritual, educational, medical, family, emotional[,] and recreational aspects of the child's life should be considered." (quoting *Woodall v. Woodall*, 322 S.C. 7, 11, 471 S.E.2d 154, 157 (1996) (alteration in original))). As to Mother's mental health, we, unlike the family court, do not find there is enough evidence to show Mother was abusing her prescription pills. However, the medical evidence, Mother's testimony, and evidence as to her previous mental health issues raise concerns over Mother's ability

to take responsibility for her mental health in the future. Additionally, while we do have concerns over Father's drinking, we find the record demonstrates Father's drinking issues and alleged poor decision making have not been in the presence of or affected Son. By contrast, the evidence from the record demonstrates Mother's inadequately managed mental health conditions have affected Son. For instance, there is evidence Mother sought medical care for Son at the hospital based on what turned out to be her delusional belief about his condition.

Third, considering the parties' willingness to encourage each other's parental relationship with Son, we find Father has been more willing to encourage Son's relationship with Mother by (1) not causing issues at custody swaps, (2) allowing Mother to have a FaceTime call with Son every other day and a phone call on the other days when Son is in Father's custody, (3) never keeping Son away from Mother during her scheduled time or for an extended period of time, and (4) making up for dropping Son off late to Mother on Son's birthday by giving her extra time later that day. We also note that up until Father began dating his current wife, the parties had joint custody and were seemingly civil with each other, but once Mother learned of Father's desire to introduce his new girlfriend to Son, Mother's willingness to share custody with Father shifted. However, we acknowledge Father has not been flawless in this regard either given his behavior at Son's t-ball game and his unwillingness to allow Mother to care for Son while Father was on a cruise.

Based on all these circumstances, we find the family court did not err in granting custody to Father because it was in Son's best interest. As such, we affirm.

2. As to attorney's fees, we find the family court did not err in awarding Father $15,000 in attorney's fees. While Mother asserts the family court did not consider Husband's net worth and ability to pay in determining whether to award attorney's fees, the family court did consider this factor as it noted that both Mother and Father had to borrow money to pay for their attorney's fees and costs in this case. *Shirley v. Shirley*, 342 S.C. 324, 341, 536 S.E.2d 427, 436 (Ct. App. 2000) ("In awarding attorney's fees, the court should consider the parties' ability to pay their own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, and the effect of the fee on each party's standard of living."). Father's testimony at trial supports that he had to borrow money to pay for his attorney's fees, as he explained he had to take out a mortgage on his home to pay for the fees. Accordingly, we find the family court did not err in ordering Mother to pay a portion of Father' attorney's fees, and we affirm.

**AFFIRMED.**[1]

**WILLIAMS, C.J., GEATHERS, J., and HILL, A.J., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.