**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Michael Shawn Halsema, Respondent,

v.

Paige Ashli Earley, Appellant.

Appellate Case No. 2022-000047

———————

Appeal From York County
Tony M. Jones, Family Court Judge
Thomas Henry White, IV, Family Court Judge
David G. Guyton, Family Court Judge
James F. Fraley, Jr., Family Court Judge

———————

Unpublished Opinion No. 2023-UP-195
Heard April 11, 2023 – Filed May 18, 2023

———————

**AFFRIMED IN PART, REVERSED IN PART, AND REMANDED**

———————

Arlaine Rockey, of Marshall, North Carolina; and Gina R. Collias, of Kings Mountain, North Carolina, both for Appellant.

Daniel Dominic D'Agostino and Jacqueline N. Davis, both of D'Agostino Law Firm, of York, for Respondent.

Nathan James Sheldon, of The Law Office of Nathan J. Sheldon, LLC, of Rock Hill, for the Guardian ad Litem.

———————

**PER CURIAM:** Paige Ashli Earley (Mother) appeals the family court's order approving her and Michael Shawn Halsema's (Father's; collectively, the parties') mediated settlement agreement. Mother argues the family court (1) erred in holding the issue of whether the court made a finding of sexual abuse in a South Carolina Department of Social Services (DSS) action against the parties was the law of the case, (2) erred in approving the mediated settlement agreement when the guardian ad litem (GAL) was a necessary party and he did not have notice of or an opportunity to review the agreement and sign it, (3) abused its discretion in excluding the testimony of Mother's expert witness and the expert witness's psychological report of the parties' minor child (Child), and (4) abused its discretion in awarding Father attorney's fees and costs. We affirm in part, reverse in part, and remand.

**FACTS AND PROCEURAL HISTORY**

This appeal arises out of a private action between the parties to modify their custody and visitation agreement in regard to Child that was later consolidated with a DSS intervention action against the parties. In March 2019, DSS opened an investigation into the family in response to reports of sexual abuse of Child by Father. The parties filed their respective complaints seeking to modify their custody and visitation agreement on April 11, 2019. Mother also sought a restraining order against Father and filed an ex parte motion for emergency or expedited relief. On April 12, the family court filed an ex parte order for an expedited or emergency hearing, scheduling an emergency hearing for April 30, granting Mother temporary emergency custody of Child, and enjoining and restraining Father from having any contact with Child. DSS indicated a finding of physical neglect against Father on April 12, 2019.

On June 7, 2019, DSS filed an intervention action against the parties alleging conduct that DSS believed constituted inappropriate supervision by Father. DSS sought a finding from the family court of abuse and neglect as defined in section 63-7-20 of the South Carolina Code (2010 & Supp. 2022). On June 19, 2019, the family court filed a temporary order in the parties' private action ordering that Father's visitation with Child should remain supervised, ordering that Child continue to attend counseling with Rebecca Gray, and mandating that the parties could not change Child's counselor without the family court's approval. The

family court also ordered the parties to submit to psychological evaluations to determine whether either party engaged in parental alienation. The family court filed a second temporary order on July 12, 2019, ordering Father's supervision requirement be modified to require supervision only while in Father's home and prohibit him from entering Child's bedroom. Subsequently, the family court filed a consent order appointing Dr. Sean Knuth as the forensic custody evaluator to conduct a targeted forensic psychological evaluation of the parties. The family court ordered Dr. Knuth to address thirteen specific matters, including determining whether "either party ever behaved in an inappropriate sexual manner around [Child] which may be considered sexual abuse."

Following a merits hearing in the DSS intervention action held on September 23, 2019, the family court found, as the parties agreed, DSS would "hold the finding as it relate[d] to [Father] in abeyance upon completion of additionally requested treatment services," including parenting classes specifically designed to address the issues in the matter. After Father completed the parenting classes, the case would be monitored for thirty days and at that time could be closed by consent order. The family court filed an order consolidating the parties' private action and the DSS intervention action on December 10, 2019.

Thereafter, Father moved to suspend the visitation restrictions under the second temporary order. Following a motion hearing held on January 14, 2020, the family court rescinded Father's supervision requirement under the second temporary order but retained the provision prohibiting Father from entering Child's bedroom. During the hearing, the family court also addressed a consent order signed by the parties closing the DSS intervention action. Father had completed the requested parenting classes and the thirty-day monitoring period had expired. The DSS order closing the case was signed on January 14, 2020, and was filed two days later on January 16, 2020.

The parties signed a mediated settlement agreement on December 22, 2020. The parties were present with their attorneys. The parties agreed Father would have primary custody of Child and would make final decisions on all matters. Mother would have visitation every Thursday beginning at 6:00 p.m. until Friday morning when Mother returned Child to school and every other weekend from Friday after school until Monday morning when Mother returned Child to school. This schedule would continue during the summer except that each party would have two, nonconsecutive weeks during the summer. The agreement removed the provision prohibiting Father from being in Child's room from the second temporary order. In the agreement, the parties acknowledged its provisions were fair,

equitable, adequate, and satisfactory; they were entering into the agreement voluntarily; and the agreement was not a result of coercion, duress, or undue influence.  The parties confirmed the agreement was in Child's best interest.

On February 9, 2021, Mother filed an amended motion to set aside the mediated settlement agreement.[1]  At the February 24, 2021 motion hearing, the family court stated the purpose of the hearing was "to determine the process[ of the parties entering into the mediated settlement agreement] and whether or not the process was valid or whether it was entered into under duress, fraud, or elements of that nature."  It explained that in the event the agreement was not set aside, the parties would be entitled to a full hearing to determine whether the family court should approve the agreement.  In its March 15, 2021 order denying Mother's motion to set aside the mediated settlement agreement, the family court found an agreement existed between the parties, it was reduced to writing, and it was executed by each party with their respective lawyers at the conclusion of the mediation.  The family court further found the parties entered into the agreement freely and voluntarily.  The court stated that a determination of whether the agreement was fair and reasonable from both a procedural and substantive perspective and whether the agreement was detrimental to Child would be addressed at a future hearing to approve the agreement.  Mother did not immediately appeal this order.

The family court held the approval hearing on July 29, 2021.  Father testified Mother took Child to see a psychologist, Dr. Dawn Y. Lanaville, without his knowledge and Mother provided him with the psychological report resulting from this evaluation, dated May 28, 2021, only a few weeks before the hearing.  Father stated the evaluation was not in Child's best interest and he would have objected to Child participating in the evaluation had he known about it.  Mother testified she hired Dr. Lanaville to perform a psychological evaluation on Child on March 16, 2021, and she did not inform Father.[2]  Laurie Reed, Child's therapist, testified she had no involvement in Dr. Lanaville's psychological evaluation of Child.  Reed raised several concerns about Mother submitting Child to a psychological evaluation with Dr. Lanaville.

---

[1] Mother filed her original motion on January 6, 2021, but it is not included in the record on appeal.

[2] Mother advised Father by email dated April 16, 2021, that she was going to retain an expert but did not provide Dr. Lanaville's identity to Father before providing him with a copy of her psychological report.

Mother called Dr. Lanaville as a witness and Father objected, arguing the evaluation was done without Father's knowledge or consent, it was against the family court's order appointing Dr. Knuth as the forensic custody evaluator, Mother did not provide him with Dr. Lanaville's psychological report until June 28, 2021, and Mother did not provide him with requested documents pertaining to the report until the weekend before the hearing. Father stated Dr. Lanaville's attorney objected to his subpoena and refused to release Dr. Lanaville's data. Mother confirmed she provided Dr. Lanaville's psychological report to Father and the GAL on June 29, 2021. The GAL testified he was extremely concerned that Mother subjected Child to further psychological testing and he believed Dr. Lanaville was a necessary witness because it impacted his opinion on whether the mediated settlement agreement was in Child's best interest.

The family court suppressed Dr. Lanaville's testimony, finding it was concerned "about how [Dr. Lanaville] ha[d] been brought up" when the information forming the basis of her psychological report was available prior to mediation. Mother requested to proffer Dr. Lanaville's testimony, and the family court refused to allow the proffer. Mother objected to the family court's refusal to allow her to proffer Dr. Lanaville's testimony and moved to proffer Dr. Lanaville's psychological report and the documents and materials Dr. Lanaville relied on in conducting Child's psychological evaluation. The family court permitted Mother to proffer these materials but stated it would not review them.

In its order approving the mediated settlement agreement, the family court found the parties entered into the agreement freely and voluntarily and the agreement was "fair, just[,] and in the best interest of [Child]." In addition, the family court found the agreement was not detrimental to Child, noting Mother consented to the dismissal of the DSS action with no finding of abuse against Father and Mother did not present any evidence to Dr. Knuth substantiating her claims that Father physically or sexually abused Child.

As to Dr. Lanaville's psychological report, the family court found the "evaluation was conducted without the knowledge, consent[,] or participation of [Father] or the knowledge and participation of the [GAL] subsequent to the February 2021 hearing" and Mother did not provide the psychological report to Father or the GAL until shortly prior to the approval hearing. The family court determined Dr. Lanaville's psychological report "did not include any input from [Father], [Child's] counselor, Dr. Knuth, or the [GAL]." The family court explained it excluded Dr. Lanaville's psychological report because Mother did not timely disclose to Father and the GAL that she intended to submit Child to a forensic interview with Dr.

Lanaville nor did she move to have Child interviewed. Further, the family court determined "Mother failed to present any arguments to demonstrate that the report was relevant or that it would aid the [c]ourt in its evaluation as to whether the [mediated settlement] agreement should be approved."

The family court further found "[Mother's] repeated assertions that [Father] sexually abused [Child], despite the consent order she entered into dismissing the DSS case with no findings of sexual abuse by [Father], lack[ed] credibility and [were] without merit." In its recitation of the procedural history of the case, the family court stated that "[t]he orders from the DSS [action] were not appealed by either party and [were] the law of the case."

The family court found the parties complied with Rule 43(k) of the South Carolina Rules of Civil Procedure and had an enforceable settlement agreement. It ordered Mother to pay Father's attorney's fees and costs in the amount of $8,923.75, taking into consideration the factors set out under *E.D.M. v. T.A.M*[3] and *Glasscock v. Glasscock*.[4] Mother filed a motion for a new trial or to alter or amend pursuant to Rule 59(a) and (e), SCRCP, which the family court denied. This appeal of the order approving the mediated settlement followed.

## ISSUES ON APPEAL

1. Did the family court err in finding the issue of whether the court made a finding of sexual abuse in the DSS action was the law of the case when the DSS action was consolidated with the private custody action before the consent order closing the DSS action was filed and the consent order held the finding of sexual abuse in abeyance thus making the order a temporary order?

2. Did the family court err in approving the mediated settlement agreement when the GAL was a necessary party and he did not have notice of or an opportunity to review the agreement and sign it?

3. Did the family court abuse its discretion in excluding Dr. Lanaville's testimony and psychological report when it was relevant to show the mediated settlement agreement was not in Child's best interest?

4. Did the family court err in ordering Mother to pay Father's attorney's fees?

---

[3] 307 S.C. 471, 415 S.E.2d 812 (1992).
[4] 304 S.C. 158, 403 S.E.2d 313 (1991).

**STANDARD OF REVIEW**

"The family court is a court of equity." *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). "Appellate courts review family court matters de novo, with the exceptions of evidentiary and procedural rulings." *Stone v. Thompson*, 428 S.C. 79, 91, 833 S.E.2d 266, 272 (2019). "Likewise, this [c]ourt reviews a family court's award of attorney's fees de novo." *Id.* at 92, 833 S.E.2d at 272. "[T]his court may find facts in accordance with its own view of the preponderance of the evidence." *Weller v. Weller*, 434 S.C. 530, 537, 863 S.E.2d 835, 838 (Ct. App. 2021). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52. "The appellant maintains the burden of convincing the appellate court that the family court's findings were made in error or were unsubstantiated by the evidence." *Weller*, 434 S.C. at 538, 863 S.E.2d at 838. "Evidentiary and procedural rulings are reviewed for an abuse of discretion." *Id.* at 538, 863 S.E.2d at 839. "An abuse of discretion occurs when the family court's decision is controlled by some error of law or whe[n] the order, based upon findings of fact, is without evidentiary support." *Id.* (alteration in original) (quoting *Gartside v. Gartside*, 383 S.C. 35, 42, 677 S.E.2d 621, 625 (Ct. App. 2009).

**LAW AND ANALYSIS**

**I. Exclusion of Dr. Lanaville's Testimony and Psychological Report**

Mother argues the family court abused its discretion by refusing to allow Dr. Lanaville to testify—or even proffer her testimony—as an expert witness and excluding her psychological report as a sanction for failing to give Father and the GAL adequate notice that she had hired an expert witness and adequate time to review the psychological report prior to the approval hearing. We agree.

"[T]he rules of discovery were designed to promote the full examination of all relevant facts and issues and to discourage litigants from surprising one another through the introduction of unexpected testimony." *Kramer v. Kramer*, 323 S.C. 212, 217, 473 S.E.2d 846, 848 (Ct. App. 1996). "In order to encourage compliance with discovery rules, trial courts can impose sanctions upon parties who violate them, including the exclusion of witnesses whose identities have been withheld." *Id.*

> Exclusion of a witness, however, is a severe sanction
> which should be imposed only after the court inquires
> into (1) the type of witness involved; (2) the content of
> the evidence to be presented; (3) the nature of the failure
> to identify the witness; and (4) the degree of surprise to
> the other party.

*Id.* at 217, 473 S.E.2d at 848-49.

We hold the family court abused its discretion in excluding Dr. Lanaville's testimony and psychological report as a discovery sanction without first allowing Mother to proffer Dr. Lanaville's testimony or reviewing the proffer of Dr. Lanaville's psychological report and supporting documents. We agree with the family court's concerns regarding Mother's retention of Dr. Lanaville to conduct a psychological evaluation of Child without input from Father, the GAL, or the family court. Moreover, Mother did not timely disclose Dr. Lanaville's name, she failed to immediately provide Dr. Lanaville's psychological report to Father and the GAL, and she withheld the documents Father requested until the weekend before the approval hearing. This limited the family court's ability to fully hear the matter before it and failed to provide Father and the GAL an adequate opportunity to respond. However, the family court failed to conduct an inquiry into the content of the evidence Mother sought to admit by refusing to allow Mother to proffer Dr. Lanaville's testimony and not reviewing her proffer of the psychological report and supporting documents. *See id.* ("Exclusion of a witness, however, is a severe sanction which should be imposed only after the court inquires into (1) the type of witness involved; (2) *the content of the evidence to be presented*; (3) the nature of the failure to identify the witness; and (4) the degree of surprise to the other party. (emphasis added)); *see also id.* at 216 n.1, 473 S.E.2d at 848 n.1 (noting the South Carolina Rules of Civil Procedure do not provide for a judge to leave the courtroom during a proffer). At the approval hearing, Mother argued Dr. Lanaville's testimony and psychological report were relevant to the determination of whether the mediated settlement agreement was detrimental to Child or in Child's best interest. The GAL testified he was concerned about Mother subjecting Child to Dr. Lanaville's psychological evaluation and believed Dr. Lanaville's testimony and report should have been admitted because it bore on his determination of whether the mediated settlement agreement was in Child's best interest. Because the best interest of Child is the family court's controlling consideration in determining whether to approve the mediated settlement agreement, we find the family court abused its discretion in excluding this

evidence as a discovery sanction without first conducting an inquiry into the content of the evidence. *See Powell v. Powell*, 256 S.C. 111, 114, 181 S.E.2d 13, 15 (1971) ("[T]he welfare of the children and what is for their best interest is the primary, paramount[,] and controlling consideration of the court in all controversies between the parents over the custody of their minor children."). Further, the family court did not identify—and there is no evidence in the record of—any discovery order Mother violated. *See Kramer*, 323 S.C. at 218, 473 S.E.2d at 849 (finding the family court's reference "only to [its] own 'rule'" in issuing a discovery sanction was insufficient to support the sanction when there was no evidence in the record showing the sanctioned party violated a discovery order). Accordingly, we reverse the family court's finding Dr. Lanaville's testimony and psychological report were inadmissible as a discovery sanction and remand this matter to the family court to allow Mother to proffer Dr. Lanaville's testimony, subject to cross-examination. Prior to the proffer, the parties may engage in discovery, as allowed by the family court. *See Brandi v. Brandi*, 302 S.C. 353, 359-60, 396 S.E.2d 124, 127-28 (Ct. App. 1990) (holding the opposing party was entitled to depose a witness on remand that was identified too late to afford an opportunity for a deposition and have an opportunity to call a rebuttal witness). If the family court determines Dr. Lanaville's testimony and psychological report are admissible, rebuttal evidence shall be allowed and the family court shall consider the admitted evidence in its determination of whether the mediated settlement agreement is in Child's best interest. Because the family court's determination of whether the mediated settlement agreement is in Child's best interest may be impacted by its determination of admissibility on remand, the award of attorney's fees shall also be determined on remand. *See Ellerbe v. Ellerbe*, 323 S.C. 283, 298, 473 S.E.2d 881, 890 (Ct. App. 1996) (remanding the issue of attorney's fees when the appellate court reversed several substantive results one of the parties achieved at the trial level); *see also E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992) ("In determining whether an attorney's fee should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) *beneficial results obtained by the attorney*; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living." (emphasis added)).

## II. Finding Against Father in DSS Action

Mother argues the issue of whether Father abused or neglected Child as alleged in DSS's complaint was not the law of the case when the finding was held in abeyance and the family court never made a finding. We disagree.

We find Mother's argument is without merit because the family court's indication that the DSS consent order closing the case without a finding was the law of the case did not foreclose Mother's abuse allegations against Father. In its order approving the parties' mediated settlement agreement, the family court noted in its recitation of the procedural history of the case that "[t]he orders from the DSS [action] were not appealed by either party and are the law of the case." This did not prevent Mother from arguing the mediated settlement agreement was not in Child's best interest because of the abuse allegations that formed the basis of the DSS intervention action. *See Powell*, 256 S.C. at 114, 181 S.E.2d at 15 ("[T]he welfare of the children and what is for their best interest is the primary, paramount[,] and controlling consideration of the court in all controversies between the parents over the custody of their minor children."). In fact, Mother raised these allegations at the approval hearing during her testimony and cross-examination of other witnesses. The family court considered the consent order closing the DSS action in making its credibility finding that "[Mother's] repeated assertions that [Father] sexually abused [Child], despite the consent order she entered into dismissing the DSS case with no findings of sexual abuse by [Father], lack[ed] credibility and [were] without merit." Accordingly, we find Mother's argument is without merit.

## III. Mother's Remaining Arguments

Mother argues the family court erred in approving the mediated settlement agreement when the GAL was a necessary party and he did not have notice of or an opportunity to review the agreement and sign it in violation of Rule 43(k), SCRCP.[5] She further argues that under our supreme court's order, *In re Operation of the Trial Courts During Coronavirus Emergency*, S.C. Sup. Ct. Order dated April 3, 2020 (Shearouse Adv. Sh. No. 14), the GAL was required to sign the mediated settlement agreement. We disagree.

As to Mother's argument the GAL was a necessary party and he did not have notice of or an opportunity to review the agreement and sign it in violation of Rule 43(k), SCRCP, we find the family court's March 15, 2021 order denying Mother's motion to set aside the mediated settlement agreement is the law of the case. *See Dreher*

---

[5] Rule 43(k), SCRCP ("No agreement between counsel affecting the proceedings in an action shall be binding unless reduced to the form of a consent order or written stipulation signed by counsel and entered in the record, or unless made in open court and noted upon the record, or reduced to writing and signed by the parties and their counsel.").

*v. S.C. Dep't of Health & Env't Control*, 412 S.C. 244, 249, 772 S.E.2d 505, 508 (2015) ("An unappealed ruling is the law of the case and requires affirmance." (quoting *Shirley's Iron Works, Inc. v. City of Union*, 403 S.C. 560, 573, 743 S.E.2d 778, 785 (2013))).  In its order, the family court found an agreement existed between the parties, it was reduced to writing, and it was executed by each party with their respective lawyers at the conclusion of the mediation.  Although the family court did not reference Rule 43(k) in its order, during the motion hearing it stated the purpose of the hearing was "to determine the process[ of the parties entering into the mediated settlement agreement] and whether or not the process was valid or whether it was entered into under duress, fraud, or elements of that nature."  Mother did not appeal the March 15, 2021 order.  Accordingly, we find the family court's March 15, 2021 order finding there was a valid agreement between the parties is the law of the case.

As to Mother's argument the GAL was required to sign the mediated settlement agreement under our supreme court's order, *In re Operation of the Trial Courts During Coronavirus Emergency*, we find this argument is without merit because the February 24, 2021 and July 29, 2021 hearings were held in person and the order approving the mediated settlement agreement was not a consent order.  *See* S.C. Sup. Ct. Order dated April 3, 2020, (f)(2)(C) ("Final consent orders approving final agreements in all matters, regardless of whether filed or heard prior to or after the declaration of this public health emergency, may be issued without requiring a hearing.  These final consent orders include marital settlement agreements, custody and visitation settlement agreements[,] and enforcement agreements.  Any proposed order or agreement must be signed by the parties, counsel for the parties, and the Guardian ad Litem, if one has been appointed.").

Finally, we decline to address Mother's argument that the family court failed to consider Child's custody preference and the family court's finding that the GAL believed the mediated settlement agreement was in Child's best interest was without evidentiary support.  We find reversing the family court's exclusion of Dr. Lanaville's testimony and psychological report and remanding for a hearing to determine the admissibility of this evidence is dispositive of this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing that an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

**CONCLUSION**

Based on the foregoing, we reverse the family court's order approving the mediated settlement agreement limited to the issue of Dr. Lanaville's testimony and psychological report and remand to the family court to allow Mother to proffer Dr. Lanaville's testimony. Prior to the proffer, the parties may engage in discovery, as allowed by the family court. If the family court determines Dr. Lanaville's testimony and psychological report are admissible, rebuttal evidence shall be allowed and the court shall consider the admitted evidence in its determination of whether the mediated settlement agreement is in Child's best interest. The award of attorney's fees shall also be determined on remand. Pending the final hearing, the currently existing status quo shall be maintained; however, either party may file a motion concerning custody of Child during the pendency of the action.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**KONDUROS and VINSON, JJ., and LOCKEMY, A.J., concur.**